STONEROCK, Appellee,

v.

**MILLER BROTHERS PAVING, INC. et al., Appellees;
United Van Lines, Appellant.**

[Cite as *Stonerock v. Miller Bros. Paving, Inc.* (1991), 72 Ohio App.3d 123.]

Court of Appeals of Ohio,
Franklin County.

No. 89AP–140.

Decided Jan. 10, 1991.

124

*Paul O. Scott* and *Dan J. Binau,* for appellee.

*Crabbe, Brown, Jones, Potts & Schmidt, Steven B. Ayers* and *John M. Gonzales; Benesch, Friedlander, Coplan & Aronoff* and *John J. Duffey,* for appellant United Van Lines.

*Ted L. Earl,* for appellee Miller Brothers Paving, Inc.

STRAUSBAUGH, Judge.

This is an appeal by defendant United Van Lines ("defendant") from a judgment of the court of common pleas in which the jury found defendant liable under Ohio's wrongful death statute. Judgment was entered against defendant in the amount of $633,035.48.

The present lawsuit arose out of an accident which occurred on May 8, 1985 on U.S. Route 30 in Ashland County, Ohio. Phillip Tong, while driving a semitrailer through a construction zone, lost control of his vehicle and collided with an unoccupied dump truck. The decedent, Kevin Stonerock, was a passenger in the vehicle and died as a result of the accident. Decedent apparently accompanied Tong on the trip to help Tong load and unload shipments. Tong was operating the semitrailer pursuant to a lease agreement between Trowbridge Storage Company ("Trowbridge") and defendant.

Plaintiff, Bobbie Jo Stonerock, as administratrix of decedent's estate, initiated the present lawsuit against Miller Brothers Paving, Inc. ("Miller Brothers"), Trowbridge, Tong, and defendant. Prior to trial, Trowbridge, Tong, and defendant filed motions for summary judgment which were overruled by the trial court. Plaintiff's motion for summary judgment was sustained to the extent that decedent was declared to be a member of the traveling public at the time of the accident. Plaintiff proceeded to trial on this theory against defendant, claiming that liability was statutorily imposed upon defendant as an Interstate Commerce Commission permit holder and, as a motor carrier, defendant was responsible for the negligence of the personnel furnished by the agent from whom the carrier leased the subject vehicle. Prior to trial, plaintiff voluntarily dismissed Trowbridge and Tong and, prior to the close of evidence, plaintiff reached a settlement with Miller Brothers. At the close of trial, defendant moved the trial court for a directed verdict on the basis that defendant was eligible to seek immunity under Ohio workers' compensation statutes. The trial court overruled defendant's motion.

Following the trial, the jury concluded that defendant was liable in the amount of $850,000 for compensatory damages and $8,035.48 for funeral and burial expenses. After subtracting payments made by Miller Brothers, plaintiff was awarded $633,035.48. The trial court also dismissed the pending cross-claims of Miller Brothers and defendant as moot.

On appeal, defendant asserts four assignments of error for this court's review:

"I. The trial court improperly overruled United Van Lines' motion for summary judgment.

"II. The trial court improperly overruled United Van Lines' motion for directed verdict.

"III. The trial court improperly instructed the jury on the law respecting the violation of traffic safety statutes and the sudden emergency defense.

"IV. Evidentiary errors occurring during trial had both the singular and cumulative effect of prejudicing United Van Lines' right to a fair trial."

■ As defendant's first assignment of error raises the issue as to whether summary judgment was properly granted in favor of plaintiff, we begin our discussion by recognizing several general principles. Summary judgment is a procedural device designed to eliminate the time and expense consumed by trial where there exists no genuine issue of material fact and, as a matter of law, the moving party is entitled to judgment. Civ.R. 56(C). The requisite elements for the granting of summary judgment were set forth by the Supreme Court in *Temple v. Wean United, Inc.* (1977), 50 Ohio St.2d 317, 4 O.O.3d 466, 364 N.E.2d 267:

"Civ.R. 56(C) specifically provides that before summary judgment may be granted, it must be determined that: (1) No genuine issue as to any material fact remains to be litigated; (2) the moving party is entitled to judgment as a matter of law; and (3) it appears from the evidence that reasonable minds can come to but one conclusion, and viewing such evidence most strongly in favor of the party against whom the motion for summary judgment is made, that conclusion is adverse to that party." *Id.* at 327, 4 O.O.3d at 472, 364 N.E.2d at 274.

Upon making a motion for summary judgment, the moving party has the burden of demonstrating that there is no genuine issue as to any material facts with regard to the critical issues presented. *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 8 O.O.3d 73, 375 N.E.2d 46. Thus, the moving party must present evidence on all the material determinative issues presented in an action in order for summary judgment to be properly

granted in its favor. *Rayburn v. J.C. Penney Outlet Store* (1982), 3 Ohio App.3d 463, 3 OBR 544, 445 N.E.2d 1167.

In its first assignment of error, defendant argues that the trial court erred in overruling its motion for summary judgment on the basis that decedent was not a "member of the traveling public" and therefore was outside the class of persons protected under the Interstate Commerce Act. Since decedent was a helper to the driver of the Trowbridge vehicle, defendant insists that decedent was directly engaged in the business enterprise of defendant and therefore he does not fall within the protected class. Defendant argues that decedent cannot be considered a stranger to defendant since he was employed by Trowbridge which was directly engaged in performing moving services for defendant. Furthermore, since decedent received workers' compensation death benefits, defendant maintains it is clear that decedent died in the scope of his employment and therefore is not a member of the traveling public.

■ In the present case, the trial court granted partial summary judgment in favor of plaintiff, concluding that at the time of decedent's death, decedent was a member of the traveling public within the meaning of the Interstate Commerce Act. Accordingly, any liability that attaches to defendant does so through application of federal law, specifically the Interstate Commerce Act and the regulations promulgated by the Interstate Commerce Commission ("I.C.C."). These regulations, and the statute pursuant to which they were promulgated, were created in order to correct widespread abuses by authorized interstate carriers who would immunize themselves from liability to the public by leasing trucks from third parties. *American Trucking Assns. v. United States* (1953), 344 U.S. 298, 303, 73 S.Ct. 307, 311, 97 L.Ed. 337, 352. It appears that the ultimate goal of the federal statute and regulations is to make a carrier/lessee liable for those injuries caused to the traveling public which arise out of the negligent operation of any vehicle leased to it and operated under its I.C.C. permit. See *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.* (1975), 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169.

Specifically, in *Transamerican Freight*, the court recognized:

" * * * As a consequence, the Commission has developed and designed its responsibility-and-control regulations in order to prevent a sharing of operating authority under the guise of a lease of equipment. With only special exceptions, the regulations require the lessee to ship under its own bill of lading, to compensate the lessor on an established basis, to inspect the equipment, and to assume full control and responsibility for the operation. * * * The regulations, however, do not require the lessee itself to operate the equipment; the lessor may perform that task by furnishing the driver with

the equipment. But the lessee must assume the responsibility for the shipment and have full authority to control it." *Id.* at 36, 96 S.Ct. at 233, 46 L.Ed.2d at 176.

In the present case, defendant's liability turns upon the issue of whether decedent was a member of the traveling public for whose death defendant is liable under federal law. The trial court concluded that decedent was indeed a member of the traveling public, following the reasoning of the court in *Proctor v. Colonial Refrigerated Transp., Inc.* (C.A.4, 1974), 494 F.2d 89, and its progeny.[1] In *Proctor*, the plaintiff had been injured while riding as a passenger in a truck which had been leased to Colonial Refrigerated Transportation, Inc., an interstate carrier, by Bales, the owner-operator of the truck. Bales had hired the plaintiff as an assistant driver of the leased truck. While transporting Colonial's items, pursuant to the lease agreement, the truck was involved in a collision with another truck which killed Bales and seriously injured the plaintiff.

The district court had instructed the jurors that if they found Bales was an independent contractor at the time of the accident, then they should return a verdict in favor of Colonial, which they ultimately did. On appeal, the court reversed and held that federal law eliminated the concepts of independent contractors and required Colonial to assume responsibility for the negligence of Bales as the driver of the leased vehicle. While Colonial argued that its statutory liability did not extend to the plaintiff who had been injured while acting as an employee as the lessor Bales, the court emphasized that the plaintiff had not been the owner of the vehicle and had no contractual relationship with Colonial. The court ultimately concluded that the plaintiff " * * * was as much a stranger to Colonial as a shipper or a member of the

---

1. In *Proctor v. Colonial Refrigerated Transp., Inc.* (C.A.4, 1974), 494 F.2d 89, 91, fn. 1, the court relied upon the statutory and regulatory scheme set forth in Section 304(e)(2), Title 49, U.S.Code and Section 1057.4(a)(4), Title 49, C.F.R. Section 304(e)(2), Title 49, U.S.Code was repealed as Section 11107(a)(4), Title 49, U.S.Code. Section 1057.4(a)(4), C.F.R. was reorganized and revised by 44 F.R. 4681 (Jan. 23, 1979), effective March 26, 1979, 44 F.R. 11070 (Feb. 27, 1979). Section 1057.4, Title 49, C.F.R. in effect at the time of the decision in *Proctor, supra,* provided in pertinent part:

"(a) *Contract requirements.* The contract, lease, or other arrangement for the use of the equipment:
"* * *

"(4) *Exclusive possession and responsibilities.* Shall provide for the exclusive possession, control, and use of the equipment, and for the complete assumption of responsibility in respect thereto, by the lessee for the duration of said contract, lease, or other arrangement * * *."

Upon review, this court finds no substantive difference between the statutes and regulations in effect at the time of the *Proctor* decision and the present statutes and regulations, and, accordingly, we conclude that the decision in *Proctor, supra,* is equally applicable to the present statutory and regulatory scheme.

traveling public, and to deny him recovery upon the independent contractor theory would undercut the primary purpose of the regulatory design. * * * " *Id.* at 92.

We note two state courts which have also considered this issue and have adopted the reasoning espoused by the court in *Proctor.* In *Schindele v. Ulrich* (Minn.1978), 268 N.W.2d 547, appeal dismissed *sub nom. Sammons v. Schindele* (1978), 439 U.S. 1059, 99 S.Ct. 739, 58 L.Ed.2d 716, the plaintiff and another individual were employed by the lessor to drive a truck which had been leased to an interstate carrier. The plaintiff suffered injuries when his codriver negligently caused an accident. While the carrier argued that it could not be held liable for the plaintiff's injuries on the basis that at the time of the accident the plaintiff was an employee of the lessor, the Supreme Court of Minnesota disagreed and relied upon the Fourth Circuit's decision and held:

" * * * Like the court in *Proctor,* we think the lessee's assumption of 'full responsibility in respect to the equipment it is operating' requires it to assume liability to a codriver for injury caused by the driver's negligence." *Id.,* 268 N.W.2d at 551.

In *Matkins v. Zero Refrigerated Lines, Inc.* (1979), 93 N.M. 511, 602 P.2d 195, the estate of a deceased passenger who had been hired by the lessor as an assistant driver brought suit against the carrier for damages arising out of the decedent's death when his codriver negligently operated the leased truck. The Court of Appeals of New Mexico held that the lessee was liable for the resulting damages caused when an employee of the lessor was killed while riding in the leased truck. Referring to *Proctor, supra,* approvingly, the court held:

"One of the principal goals of the ICC regulation imposing responsibility on the carrier was to provide the public with financially responsible carriers. *Indiana Refrigerator Lines, Inc. v. Dalton,* 516 F.2d 795 (4th Cir.1975). In acknowledgment of that purpose, *Proctor* reasoned that plaintiff, although an employee of the negligent driver and a passenger in the truck driven by him, was as entitled to the protection intended by the Commission's regulations as any other member of the traveling public. We feel that plaintiff here, representing the estate of deceased, is entitled to the same protection under the ICC regulations, and to deny him the right to seek recovery from the carrier would undercut one of the primary purposes of the regulatory pattern." *Matkins, supra,* 93 N.M. at 516, 602 P.2d at 200.

Defendant, however, has cited *White v. Excalibur Ins. Co.* (C.A.5 1979), 599 F.2d 50, certiorari denied (1979), 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377, in which the Court of Appeals for the Fifth Circuit disagreed with the Fourth Circuit's decision in *Proctor, supra.* In *White, supra,* the plaintiff brought a

wrongful death suit arising out of the decedent's death against the carrier, alleging that federal law made the carrier vicariously liable for the decedent's death. The decedent had been hired as a driver by the lessor-owner of the truck which had been leased to the carrier. While the decedent slept during his rest period, his codriver negligently operated the truck, resulting in an accident which caused the decedent's death. In denying the plaintiff's claim, despite the absence of a contractual agreement between the carrier and the lessor's employees, the court concluded that since federal law required motor carriers to assume full direction and control of vehicles leased to them, the drivers of those vehicles, although not directly hired by the carrier, should be deemed to be the statutory employees of the carrier as if the carrier were the owner of the vehicle. The court reasoned that the decedent could not be considered a stranger to the carrier and therefore a member of the traveling public, since the decedent was directly engaged in furthering the economic interest of the carrier.

Subsequent to the court's decision in *White, supra,* the Superior Court of Pennsylvania addressed the divergent case law resulting from the federal court's decisions. In *Wilkerson v. Allied Van Lines, Inc.* (1987), 360 Pa.Super. 523, 521 A.2d 25, the court relied upon the decision in *Proctor, supra,* so as to apply the protection of federal regulations and statutes to the plaintiff who was injured when he was a passenger in a truck which was involved in interstate commerce. The truck was owned and operated by Lyle Jordan, who leased the truck to Fisher & Brother, Inc., which, in turn, had leased the truck to Allied Van Lines, Inc. The plaintiff had been hired by Jordan to act as a helper whose responsibilities were to load and unload trucks and, after completing his work, Jordan would provide transportation to the plaintiff so that he could reach a destination convenient to him. It was on one of these occasions that an accident occurred which caused serious injury to the plaintiff.

After addressing the two views emanating from the federal courts, the *Wilkerson* court ultimately concluded that the view espoused by the court in *Proctor* was the better approach:

"We agree with this view. We do so because such a view is consistent with the purposes sought to be achieved by the federal law. To hold that Wilkerson was not entitled to recover from the carrier under whose certificate of necessity the truck was being operated would defeat the salutary purpose of ensuring compensation for innocent persons who have been injured as a consequence of the carrier's doing business. Although it is true that Jordan, as lessor, could not have recovered from the carrier if he had been injured by his own negligence, or the negligence of one of his employees, Wilkerson had

no direct relationship with the carrier and no ownership interest in the leased vehicle. Therefore, he was a member of the public intended to be benefitted by the vicarious liability provisions of federal law. He was a member of the public within the intendment of federal law, and, as such, could recover against Allied for the negligence of Jordan." *Wilkerson, supra,* 360 Pa.Super. at 532, 521 A.2d at 30.

In the present case, we find no error by the trial court in granting partial summary judgment in plaintiff's favor on the basis of its conclusion that decedent was a member of the traveling public for purposes of federal law. We believe that decedent's employment as a helper, an individual who had been furnished by Trowbridge to assist the driver in loading and unloading the truck, places decedent in a position which was intended to be protected by federal law. See *Proctor, supra; Wilkerson, supra.* Accordingly, defendant's first assignment of error is not well taken and is overruled.

■ Defendant next argues that the trial court improperly overruled its motion for directed verdict since under Ohio workers' compensation law decedent's immediate employer, Trowbridge, is immune from suit and plaintiff's action against defendant is similarly barred. Defendant insists that it, as a principal, cannot be held vicariously liable for the negligence of its agent if the agent is immune from suit. Defendant argues that as the lease agreement between defendant and Trowbridge required Trowbridge to provide workers' compensation coverage, defendant substantially complied with Ohio law by contractually ensuring coverage for personnel operating equipment under its I.C.C. permit and it should therefore be permitted the same protection from suit.

Civ.R. 50(A)(4) provides:

"* * * When a motion for a directed verdict has been properly made, and the trial court, after construing the evidence most strongly in favor of the party against whom the motion is directed, finds that upon any determinative issue reasonable minds could come to but one conclusion upon the evidence submitted and that conclusion is adverse to such party, the court shall sustain the motion and direct a verdict for the moving party as to that issue."

In the third and fourth paragraphs of the syllabus in *O'Day v. Webb* (1972), 29 Ohio St.2d 215, 58 O.O.2d 424, 280 N.E.2d 896, the Supreme Court held:

"A motion for directed verdict or a motion for judgment notwithstanding the verdict does not present factual issues, but a question of law, even though in deciding such a motion, it is necessary to review and consider the evidence.

"It is the duty of a trial court to submit an essential issue to the jury when there *is* sufficient evidence relating to that issue to permit reasonable minds

to reach different conclusions on that issue, or, conversely, to withhold an essential issue from the jury when there *is not* sufficient evidence relating to that issue to permit reasonable minds to reach different conclusions on that issue."

Defendant argues that it is entitled to vicarious immunity by virtue of the workers' compensation benefits paid by Trowbridge. However, we cannot agree. R.C. 4123.04 provides:

"Sections 4123.01 to 4123.94, inclusive, of the Revised Code apply to employers and their employees engaged in intrastate commerce and also in interstate and foreign commerce, for whom a rule of liability or method of compensation has been or may be established by congress, only to the extent that their mutual connection with intrastate work may and shall be clearly separable and distinguishable from interstate or foreign commerce, and then only when such employer and any of his workmen working only in this state, with the approval of the industrial commission, and so far as not forbidden by any act of congress, voluntarily accept the provisions of such sections by filing written acceptances, which, when filed with and approved by the commission, shall subject the acceptors irrevocably to such sections to all intents and purposes as if they had been originally included in its terms, during the periods for which the premiums provided in such sections have been paid. Payment of premium shall be on the basis of the payroll of the workmen who accept." [2]

While defendant seeks immunity from liability pursuant to R.C. 4123.74, we do not find that defendant has voluntarily accepted the provisions of R.C. Chapter 4123. Rather, in defendant's lease agreement with Trowbridge, defendant required that Trowbridge provide workers' compensation coverage and comply with the attendant responsibilities. Since under the lease agreement defendant received the benefit of having Trowbridge comply with the conditions of Ohio workers' compensation laws, we cannot conclude that defendant is entitled to receive the benefit of immunity from suit in the present case. The lease agreement demonstrates that defendant, in exchange for not having to comply with this state's workers' compensation laws, necessarily assumed the detriment of not being able to claim immunity under those statutes. While defendant argues that by requiring Trowbridge to comply with Ohio workers' compensation scheme it is entitled to immunity on that basis, we cannot conclude that defendant has voluntarily accepted, by filing written acceptances with the Industrial Commission, the Ohio Workers'

---

2. This statute was subsequently amended effective November 3, 1989, but nevertheless retains the same essential elements.

Compensation Act. By relieving itself of the burdens of meeting the statutory obligations to provide workers' compensation coverage, we conclude that defendant has relinquished to Trowbridge the sole right to invoke the provisions of Ohio workers' compensation laws. .Cf. *Schindele, supra; Matkins, supra.* As we find no error by the trial court in overruling defendant's motion for a directed verdict, we find that defendant's second assignment of error is not well taken and is overruled.

Defendant argues in its third assignment of error that the trial court improperly instructed the jury with regard to the violation of traffic safety statutes and the sudden emergency defense. Over objection, the trial court charged the jury as to alleged traffic violations for failure to maintain control, driving in marked lanes, and driving upon a closed highway. Defendant insists that these statutes have no application to the evidence in the present case since the primary issue before the jury was whether Tong's speed was excessive under the circumstances. Defendant also contends that the trial court failed to instruct the jury on sudden emergency which would excuse a driver's failure to maintain control of his vehicle on the basis that since the evidence demonstrated that Tong had control of his vehicle until a road defect caused him to suddenly lose control of his vehicle. Finally, defendant contends that the trial court should have charged the jury that Tong was traveling at a lawful speed, below the posted limit, rather than instructing the jury that a speed less than fifty-five m.p.h. may be unreasonable and improper.

▮ Specifically, defendant argues that the trial court erred in charging the jury on the law respecting alleged violations of R.C. 4511.202, operating a motor vehicle without reasonable control; R.C. 4511.33, driving in marked lanes; and R.C. 4511.71, driving upon a closed highway. We note that when considering the appropriateness of a jury instruction, the jury instructions as a whole must be reviewed, and reversible error does not ordinarily consist of misstatements or ambiguity in a portion of the instruction. *Snyder v. Stanford* (1968), 15 Ohio St.2d 31, 44 O.O.2d 18, 238 N.E.2d 563; *State v. Porter* (1968), 14 Ohio St.2d 10, 43 O.O.2d 5, 235 N.E.2d 520. No reversible error will be found to have been committed provided that the law is clearly and fairly expressed to the jury and that they are able to understand it as it applies to the facts in the case at hand. *Wagenheim v. Alexander Grant & Co.* (1983), 19 Ohio App.3d 7, 19 OBR 71, 482 N.E.2d 955. Even if there exists reversible error in the charge, it must also be demonstrated that substantial rights of the complaining party have been directly affected and that there exists prejudice before a reversal is justified. *Ohio Farmers Ins. Co. v. Cochran* (1922), 104 Ohio St. 427, 135 N.E. 537.

 Upon review of the evidence presented at trial, we conclude that there exists no error regarding the trial court's instruction concerning the three highway statutes of which defendant complains. R.C. 4511.202 prohibits the operation of a motor vehicle on any street or highway without the driver being in reasonable control of the vehicle. While defendant insists that Tong lost control of the motor vehicle he was driving only after he encountered a road defect, we believe that the trial court was warranted in instructing the jury on this charge since there remained a question of fact as to whether Tong was in control before or after encountering a possible defect in the road. Given the conditions of the road, we believe that it was appropriate for the trial court to instruct the jury as to whether, given the speed at which he was traveling, Tong operated the vehicle with reasonable control.

 We also find no error by the trial court in instructing the jury as to R.C. 4511.33(A), which requires that an operator of a motor vehicle drive the vehicle within marked lanes for traffic. The trial court instructed the jury that as far as was practicable, a driver has an obligation to drive his motor vehicle within marked lanes and failure to do so constitutes negligence. As Tong left his lane of travel and entered a construction zone, we find no error in the trial court's instructing the jury in this regard.

 Finally, we conclude that there exists no error in the trial court's instructing the jury with regard to R.C. 4511.71, which proscribes the operation of a motor vehicle upon a highway which is under construction. In the present case, it is undisputed that Tong drove into a construction zone.

 While defendant insists that the jury should not have been instructed regarding any of these statutes, the violation of which would constitute negligence on the part of the driver, we note that the trial court nevertheless gave an instruction that a driver could be excused from his failure to comply with these statutes if there existed a sudden emergency arising out of the conditions which existed. Specifically, the trial court gave the following instruction regarding sudden emergency:

"Here again it is for you, the jury, to decide whether the defendant's driver violated the statute; and, if so, was it excusable under the circumstances then existing.

"An operator of a motor vehicle who fails to comply with a statute is excused from such failure to comply with the statute and he avoids the legal effect of negligence arising therefrom by establishing by a preponderance of the evidence that without fault on his part, and because of circumstances over which he had no control, he was confronted by a sudden and unforeseeable emergency which made compliance with such statute impossible.

"If you find that these conditions existed, the defendant is excused from a violation of such statute. If you find that the defendant was excused from complying with the statute because of a sudden emergency, he is still required to use ordinary care under the circumstances. Ordinary care is such care that a reasonably prudent person would use under the same or similar circumstances."

While the trial court did not repeat the sudden emergency charge after each and every charge of a safety statute violation, we do not conclude that there exists prejudicial error in the trial court's failure to do so.

 Finally, defendant claims error in the trial court's instructing the jury with respect to a reasonable speed. Defendant cites the following instruction given by the trial court:

"In this case a speed in excess of 55 miles per hour standing alone is considered unreasonable. The court instructs you that a speed less than that fixed by the state may, under certain circumstances be unreasonable and improper.

"Whether the rate of the speed of the defendant's vehicle, whatever you find it to be, or to have been, was reasonable or proper in view of all of the surrounding circumstances, is for you, the jury, to determine. No particular rate of speed less than 55 is a conclusive violation of the law."

Defendant argues that a proper charge would simply have informed the jury that Tong was proceeding at a lawful speed, which was below the posted limit. However, we find no prejudice to defendant in the failure to give such an instruction. Rather, given the circumstances of any individual case, the operation of a motor vehicle, even if being driven below the posted speed limit, may be unreasonable given the circumstances which exist. Accordingly, defendant's third assignment of error is not well taken and is overruled.

 In its fourth assignment of error, defendant contends that the trial court improperly allowed evidence to be introduced which tended to prejudice defendant's right to a fair trial. Specifically, defendant argues that it was improper to allow evidence of the absence of prior accidents to be introduced. We recognize that a trial court's decision whether to admit or exclude certain evidence from trial is within the sound discretion of the trial court, and such a ruling will not be reversed unless there has been a clear and prejudicial abuse of discretion. *O'Brien v. Angley* (1980), 63 Ohio St.2d 159, 17 O.O.3d 98, 407 N.E.2d 490. We find no abuse of discretion by the trial court in admitting the evidence of which defendant complains as the absence of such accidents would be relevant in the present case. We cannot conclude that the trial court's attitude was unreasonable, arbitrary, or unconscionable, and therefore we find

no abuse of discretion by the trial court. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 5 OBR 481, 450 N.E.2d 1140. While defendant relies upon the Supreme Court's holding in *Drake v. Caterpillar Tractor Co.* (1984), 15 Ohio St.3d 346, 15 OBR 468, 474 N.E.2d 291, we do not find it applicable in the present case.

■■■■ Defendant next argues that plaintiff's counsel, during closing arguments, inappropriately referred to materials not in evidence before the jury, such as newspaper articles, which were intended to influence the jury's monetary award. Specifically, defendant cites the following:

"The recent van Gogh painting sold for 20.2 million dollars. It is a painting. It is not a person. I saw where this race car driver gets 1.9 million dollars for the stickers on his uniform and on his car. That is for stickers on a car.

"Here is a million dollars if you catch a certain fish. Michael Jackson, 70 million dollars for one record; 50 million dollars for another record. Ralph Sampson, basketball player, four million, four years. This week Oral Hershiser, World Series shoots for ten million for five years."

In the context of misconduct of counsel in opening statement, the Supreme Court of Ohio stated in paragraph two of its syllabus in *Maggio v. Cleveland* (1949), 151 Ohio St. 136, 38 O.O. 578, 84 N.E.2d 912:

"Counsel should be accorded latitude by the trial court in making his opening statement, but when he deliberately attempts to influence and sway the jury by a recital of matters foreign to the case, which matters he knows or ought to know cannot be shown by competent or admissible evidence, or when he makes a statement through accident, inadvertence or misconception which is improper and patently harmful to the opposing side, it may constitute the basis for ordering a new trial or for the reversal by a reviewing court of a judgment favorable to the party represented by such counsel."

This holding has been declared to be equally applicable to closing arguments. *Drake, supra.* See, also, *Pang v. Minch* (1990), 53 Ohio St.3d 186, 559 N.E.2d 1313. However, the general rule exists that analogies, deductions, and inferences are legitimate subjects of argument and considerable latitude is to be accorded counsel in that regard. Cf. *Durst v. Van Gundy* (1982), 8 Ohio App.3d 72, 8 OBR 103, 455 N.E.2d 1319; *Coffey v. Shenk* (1974), 39 Ohio App.2d 156, 68 O.O.2d 352, 316 N.E.2d 917. While counsel should perhaps refrain from making such statements, we cannot conclude that in the present case defendant was prejudiced thereby.

■■■■ Defendant argues that plaintiff also improperly injected insurance coverage into the case. Defendant cites plaintiff's cross-examination of an annuity broker. Plaintiff asked whether the witness was a representative of

the insurance industry. In overruling defendant's motion for a mistrial on the issue, the trial court recognized that the purpose of defendant's question was simply to show bias, in that the witness always appeared as a witness on behalf of the defense. We conclude that the trial court did not abuse its discretion in allowing the cross-examination conducted by plaintiff's counsel with regard to the background, bias, and expertise of defendant's expert witness.

■ Defendant also argues that plaintiff's counsel compounded the alleged foregoing errors by attempting to invoke the passion of the jury when he ushered decedent's widow and young daughter into the courtroom and took them into his arms. We find nothing improper in the fact that plaintiff and her daughter were present and attended counsel's closing argument. While defendant claims that plaintiff's counsel also cried, the trial court stated:

"Let the record show I don't remember him crying. I heard his voice crack. The wife and the child, I suppose, could have been in the courtroom at all times. They were parties. I don't think it has prejudiced your case in view of the fact the court instructed the jury that they are not to be governed by sympathy in the case. Hopefully they will follow my instructions."

■ Finally, defendant insists that plaintiff improperly asked the jury to place themselves in the place of plaintiff when determining the amount of damages which should be awarded. This type of argument is frequently referred to as the "golden rule" argument. However, upon review of counsel's remark, it appears that counsel requested that the jury understand the elements of the case and that he did not ask the jurors to place a value on those elements as to each of them personally. Rather, counsel requested that the jury assess the concepts addressed and come up with a fair and accurate amount to which plaintiff would be entitled. Accordingly, plaintiff's fourth assignment of error is not well taken and is overruled.

On cross-appeal, plaintiff presents but one assignment of error:

"The trial court committed prejudicial error in overruling plaintiff's motion for a directed verdict that Tong was negligent as a matter of law and in instructing the jury on sudden emergency."

In paragraph eight of the syllabus in *Pang, supra*, the Supreme Court held:

"Where the court of appeals determines that the trial court committed no error prejudicial to the appellant in any of the particulars assigned and argued in the brief thereof, App.R. 12(B) requires the appellate court to refrain from consideration of errors assigned and argued in the brief of appellee on cross-appeal which, given the disposition of the case by the appellate court, are not prejudicial to the appellee. The judgment or final order of the trial court

should, under such circumstances, be affirmed as a matter of law by the court of appeals."

As we have overruled each of defendant's assignments of error, we conclude that, pursuant to the announcement in *Pang,* it is appropriate that we do not consider plaintiff's assigned error. On this basis, plaintiff's assignment of error on cross-appeal is overruled.

Based upon the foregoing, defendant's assignments of error are not well taken and are overruled. Similarly, plaintiff's assignment of error raised on cross-appeal is overruled. The judgment of the trial court is hereby affirmed.

*Judgment affirmed.*

BOWMAN and JOHN C. YOUNG, JJ., concur.