In this consolidated case, State Farm Mutual Automobile Insurance Company ("State Farm"), Erin Drown ("Erin"), and Jason Cruit ("Jason"), appellants, appeal three June 15, 1998 judgments and a November 13, 1998 judgment of the Court of Claims of Ohio finding that: (1) Ohio Department of Transportation ("ODOT"), appellee, was not negligent; (2) Peggy Cruit ("Mrs. Cruit") was not negligent; (3) Jason was sixty percent negligent; and (4) Erin was forty percent negligent. We affirm.
In July 1993, Mrs. Cruit, Jason's mother, purchased a 1993 Honda CBR 600 motorcycle for Jason, who was sixteen years old. Mrs. Cruit was the title owner of the motorcycle. On August 3, 1994, at approximately 8:55 p.m., Jason and his girlfriend, Erin, were involved in a motorcycle accident that occurred on State Route 83 ("SR 83") in Wayne County, Ohio.
At the time of the accident, Jason had lived in the Wooster area his entire life and had lived with his parents on Kieffer Street in Wooster for approximately six years. Jason's home on Kieffer Street is located approximately four miles from the accident scene.
Jason had a temporary permit to operate the motorcycle at the time of the accident, but he did not have a permanent motorcycle license. The temporary motorcycle license prohibited Jason from driving after dark and carrying passengers and required Jason to wear a helmet.
From the time of the purchase of the motorcycle until the date of the accident, Mrs. Cruit had experienced difficulties associated with Jason's operation of the motorcycle. She had prohibited him from riding the motorcycle on several occasions for various reasons, including driving too fast, accelerating too fast, and carrying Erin as a passenger. Jason's mother and father had warned Jason not to carry Erin as a passenger, although Jason continued to allow Erin to ride with him.
On August 3, 1994, Jason and Erin had been at Jason's house for most of the day. Jason was grounded from operating the motorcycle on this day, and Mrs. Cruit told Jason before leaving that he was not to ride the motorcycle. Jason's mother left the house to go shopping at approximately 6:00 p.m. At approximately 8:00 p.m., Jason and Erin took the motorcycle for a ride. Jason was operating the motorcycle, and Erin was a passenger.
Jason testified that he and Erin traveled out of Wooster southbound on Prairie Lane Road. They then turned south onto SR 83 and rode toward Holmes County and the City of Moreland. Realizing that it was getting late and in an effort to get home before Jason's mother returned from shopping, they decided to turn around and return to Jason's home. However, instead of taking SR 83 north to Prairie Lane Road, Jason decided to take SR 83 the entire way back to Wooster. SR 83 is a two-lane road with a speed limit of 55 m.p.h.
They were traveling northbound on SR 83 when they approached a left curve in the road just beyond a hillcrest, at which point the road dipped down at a grade of approximately nine degrees. Jason lost control of his motorcycle, traveled off the right side of the road, and struck a guardrail near the bottom of the crest. Jason and Erin both sustained injuries as a result of the accident.
On March 4, 1996, State Farm filed a complaint in the Wayne County Court of Common Pleas against Jason and Mrs. Cruit, seeking recovery based on subrogation of monies paid to its insured, Erin, as a result of the injuries she sustained. The monies were paid under a policy of insurance with State Farm that provided uninsured motorist coverage to Erin. The motorcycle was not insured on the date of the accident.
On March 28, 1996, Jason and Mrs. Cruit filed a petition for removal in the Ohio Court of Claims and also filed a third-party complaint against ODOT, seeking recovery against ODOT for the injuries and medical expenses sustained and incurred by Jason as a result of the accident. Jason and Mrs. Cruit claimed that ODOT had negligently failed to maintain a left-reverse curve sign on SR 83 to warn Jason of the curve over the crest of the hill. Jason and Mrs. Cruit also requested contribution and indemnification from ODOT for any judgment State Farm recovered against them. ODOT filed its answer to the Cruit's third-party complaint on May 16, 1996.
On April 11, 1997, State Farm filed a direct action against ODOT in the Court of Claims seeking recovery for the monies that it was required to pay Erin under the uninsured motorist coverage. State Farm claimed that ODOT was negligent in failing to maintain a traffic-control sign on SR 83. On May 5, 1997, ODOT filed its answer to State Farm's complaint and also filed a third-party complaint against Jason and Mrs. Cruit for indemnification for any judgment State Farm recovered against ODOT. Jason and Mrs. Cruit filed their answer to ODOT's third-party complaint on May 22, 1997.
On April 16, 1997, Erin filed a complaint against ODOT in the Court of Claims seeking recovery for personal injuries that she claims to have sustained as a result of ODOT's negligence in failing to maintain signage on SR 83. On May 5, 1997, ODOT filed its answer to Erin's complaint and also filed a third-party complaint against Jason and Mrs. Cruit for contribution and indemnification for any judgment Erin recovered against ODOT. On May 22, 1997, Jason and Mrs. Cruit filed their answer to ODOT's third-party complaint.
The Court of Claims tried the three cases together on the issue of liability only. On June 15, 1998, the Court of Claims issued a decision finding ODOT was not negligent in failing to maintain signage on SR 83. The trial court also found that Jason was sixty percent negligent, Erin was forty percent negligent, and Mrs. Cruit was not negligent in entrusting the motorcycle to Jason.
The issue of damages as between State Farm and Jason Cruit was subsequently settled by agreement of the parties, and an agreed judgment entry was filed on November 13, 1998. State Farm, Jason, and Erin now appeal the judgments of the Court of Claims.
 State Farm asserts the following two assignments of error:
Assignment of Error No. 1:
 The Trial Court erred as a matter of law in its Decision and Judgment finding that ODOT was not negligent for the reason that such is against the manifest weight of the evidence.
Assignment of Error No. 2:
 The Trial Court erred as a matter of law in its Decision and Judgment finding that ODOT's negligence did not proximately cause the accident for the reason that such is against the manifest weight of the evidence.
 Erin Drown asserts the following assignment of error:
ASSIGNMENT OF ERROR NO. 1:
 The decision of the Trial Court is against the manifest weight of the evidence and is contrary to law.
 Jason Cruit asserts the following three assignments of error:
Assignment of Error No. 1:
 The Trial Court erred as a matter of law in its Decision and Judgment finding and holding ODOT not negligent for the reason that such is against the manifest weight of the evidence.
Assignment of Error No. 2:
 The Trial Court erred as a matter of law in its Decision and Judgment finding and holding ODOT's negligence did not proximately cause [the] accident for the reason that such is against the manifest weight of the evidence.
Assignment of Error No. 3:
 The Trial Court erred as a matter of law in its Decision and Judgment finding and holding Jason 60% negligence [sic] for the reason that such is against the manifest weight of the evidence.
Because they are interrelated and address the same issues, we will address State Farm's first assignment of error, Jason Cruit's first assignment of error, and Erin Drown's assignment of error. In these assignments of error, State Farm, Jason, and Erin essentially argue that the Court of Claims' decision finding that ODOT did not breach its duty was against the manifest weight of the evidence.
The standard of review in manifest weight cases has been clearly established. In determining whether the judgment of the trial court is against the manifest weight of the evidence, a reviewing court must be guided by the presumption that the findings of the trial court are correct, as the trial judge is best able to view the witnesses and observe the demeanor, gesture, voices and inflections and use these observations in weighing the credibility of the proffered testimony.Seasons Coal Co. v. Cleveland (1984), 10 Ohio St.3d 77, 80. The Ohio Supreme Court has held that:
 Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence.
C. E. Morris Co. v. Foley Construction Co. (1978), 54 Ohio St.2d 279, syllabus.
In order to prove that ODOT was negligent, appellants had to establish, by a preponderance of the evidence, that ODOT owed them a duty, that ODOT breached that duty, and that the breach of that duty was the proximate cause of their injuries.Littleton v. Good Samaritan Hospital Health Ctr. (1988),39 Ohio St.3d 86, 92. ODOT has a general duty to maintain and repair state highways. White v. Ohio Dept. of Transp. (1990),56 Ohio St.3d 39, 42. However, ODOT is not an insurer of the safety of the state's highways. Rhodus v. Ohio Dept. of Transp.
(1990), 67 Ohio App.3d 723, 730.
The scope of ODOT's duty to ensure the safety of state highways is more particularly defined by the Ohio Manual of Uniform Traffic Control Devices ("manual"), which mandates certain minimum safety measures. Leskovac v. Ohio Dept. ofTransp. (1990), 71 Ohio App.3d 22, 27. Furthermore, R.C.4511.10 and 4511.11(D) specifically require that traffic control devices placed on Ohio's roadways conform with the manual's specifications. This court considered the weight to be accorded the manual specifications in evaluating ODOT's duty to maintain safe highways in Perkins v. Ohio Dept. of Transp.
(1989), 65 Ohio App.3d 487, wherein we determined that not all portions of the manual are mandatory, thereby leaving some areas within the discretion and engineering judgment of ODOT.
The trial court determined that decisions concerning what traffic control devices and whether extra traffic control devices are necessary at a given intersection are decisions that rest within the sound discretion of ODOT and to which ODOT is entitled to immunity. The trial court's decision in this regard is correct. See Reynolds v. State (1984), 14 Ohio St.3d 68; Garland v. Ohio Dept. of Transp. (1990), 48 Ohio St.3d 10. Section 2(M)-1-2 of the manual and R.C. 4511.10 permit, but do not require, ODOT to erect warning signs on through highways. Therefore, whether to place a left-reverse curve sign at the location south of the hilltop and curve to warn northbound drivers on SR 83 was a decision within the discretion of ODOT and to which it is entitled immunity.
However, appellants also argue that ODOT had previously determined that a left-reverse curve sign was needed and had erected a sign in the location in question but that the sign was then removed or not replaced at the time of the accident. Thus, appellants argue that ODOT was negligent in failing to maintain the sign. However, even assuming arguendo that ODOT had a duty to appellants to reasonably maintain the sign once it decided to erect it, the fact that the warning sign was missing does not, in and of itself, establish a breach of such duty on the part of ODOT. Instead, as in other negligence cases, ODOT must have had either actual notice or constructive notice of the downed sign before ODOT could be found negligent for failing to reasonably maintain the left-reverse curve sign.Cushman v. Ohio Dept. of Transp. (Mar. 14, 1996), Franklin App. No. 95API07-844, unreported (1996 Opinions 897).
At trial and on appeal, appellants argued ODOT had both actual and constructive notice of the missing sign along the roadway where the accident occurred. Constructive notice is distinguishable from actual notice in the manner in which it is obtained or assumed to have been obtained rather than the amount of information obtained. In re Estate of Fahle (1950),90 Ohio App. 195. Further,
 [w]herever from competent evidence the trier of the facts is entitled to hold as a conclusion of fact and not as a presumption of law that information was personally communicated to or received by a party, the notice is actual. Constructive notice is that which the law regards as sufficient to give notice and is regarded as a substitute for actual notice.
Fahle, paragraph two of the syllabus.
The trial court found that ODOT did not have actual notice of the missing left-reverse curve sign. In support of their argument that ODOT had actual notice of the missing sign, Jason, Erin, and State Farm point to a 1988 engineering drawing and to two 1993 construction projects in the area.
The 1988 engineering drawing does not show the existence of the warning sign. James Madden, a consulting and forensic engineer, testified that if a left-reverse curve sign was intended to be in place at the end of the project, then it must be shown on the "plan-and-profile" engineering drawing. Jason Cruit argues that ODOT presented no evidence to rebut that the sign was not there at the time of the 1988 engineering drawing. However, William Isaac, ODOT's Wayne County Superintendent, contradicted Mr. Madden's testimony, stating that not everything that was to be in place after a construction job was finished had to be on the engineering drawings. Further, although Mr. Madden testified that he has been in accident reconstruction for over fourteen years, Mr. Madden's practical engineering experience did not include roadway construction but, rather, was limited to the design of factories, plants, and equipment. The trial court was in the best position to view the witnesses and observe the demeanor and credibility of their proffered testimony. Seasons Coal Co., supra. Thus, the court could have believed the testimony of Mr. Isaac that the engineering drawings would not necessarily indicate a warning sign had been in place at the time the drawing was completed.
Appellants also argue that documents regarding repaving work performed in 1993 on SR 83 established actual notice to ODOT that the warning sign was missing. However, appellants present nothing to indicate that the sign was, in fact, missing in the spring of 1993 or whether ODOT had actual knowledge of the sign missing at that time. Further, as ODOT points out, the evidence relating to the repaving reveals no signage-related pay items in the contract, no charge orders for signage-related items in the request or approval for the project, and no sign-related problems during the final inspection of the area.
Further, appellants argue that ODOT had actual notice of the missing sign because a performed construction on the culvert in the spring of 1993 in the area where the sign was located. Appellants claim that the culvert construction could have interfered with the sign or the sign may have been removed during the construction, if one had been in place at that time. As with the evidence relating to the repaving project in the area of the accident, appellants presented no evidence to indicate that the sign was, indeed, missing at the time of the construction of the culvert or was not replaced after the project.
In addition, there was testimony from several witnesses that they had no knowledge that the sign was missing prior to the accident that would have given ODOT actual notice. Arthur Evans, a route marker for ODOT assigned to Wayne County in 1993, testified that he did not receive any calls informing him that a sign was missing prior to the accident. Mr. Evans stated that he did not receive any notice from his superiors or anybody else that the sign was missing prior to August 3, 1994. He also testified that he patrolled all of the state highways in Wayne County at least two or three times per month, but he did not know whether a sign had been in that location during the year prior to Jason and Erin's accident. When he did realize that the sign was missing in November 1994, he replaced it. William Isaac, who patrolled SR 83 approximately every two weeks, testified that neither he nor his subordinates had any knowledge that a sign was missing prior to the accident. Further, Trooper Scott Widder testified that from 1990 forward, he received no notice from residents in the area, motorists, or anyone else that there was a missing left-reverse curve sign.
Therefore, the trial court's finding that ODOT did not have actual knowledge that the sign was missing was not against the manifest weight of the evidence.
Appellants also argue that ODOT had constructive notice. For there to be constructive notice of a nuisance or defect in the highway, it must have existed for such length of time as to impute knowledge or notice. Bello v. Cleveland (1922), 106 Ohio St. 94; McCave v. Canton (1942), 140 Ohio St. 150. When there is no evidence that the specific condition on the date of the accident existed for a sufficient period so as to have been discovered, constructive notice is lacking. Manning v. OhioDept. of Transp. (Apr. 24, 1997), Franklin App. Nos. 96API07-931, 96API07-932, 96API07-937, unreported (1997 Opinions 1499), citing Beatrice Foods Co. v. Furbee (Dec. 1, 1981), Guemsey App. No. CA 655, unreported.
Appellants argue that the evidence supports a finding that the sign was missing for a sufficient length of time to constitute constructive notice. We disagree. There was testimony that ODOT employees regularly travel SR 83 and that no one had ever reported a missing sign at that spot. Mr. Evans specifically testified that although he replaced the left-reverse curve warning sign on November 23, 1994, he did not know how long the sign had been missing. Scott Butcher, who lived in Wooster his entire life and had driven on SR 83 on his motorcycle, testified that he did not know whether a left-reverse curve warning sign had ever been there. Mr. Cruit also testified that he did not know how long the sign had been missing. Appellants failed to present any witnesses testifying as to how long the sign had been down.
There was also evidence that approximately 3,620 vehicles per day, or 1,321,300 vehicles per year, traveled through SR 83 northbound in the area of the accident. Trooper Widder testified that he did not investigate any other accidents that took place in the area of Jason's accident, and he was not otherwise aware of any accidents in the area. Thus, there was also no evidence that ODOT could have had constructive notice as a result of other previous accidents in the same area.
Therefore, the trial court's finding that ODOT lacked constructive notice the missing left-reverse curve sign was not against the manifest weight of the evidence.
Accordingly, we find that there was competent, credible evidence to support the trial court's finding that ODOT did not breach its duty to appellants. State Farm's first assignment of error, Jason Cruit's first assignment of error, and Erin Drown's assignment of error are overruled.
We also note that Erin argued in her assignment of error that if we were to find ODOT negligent, we should also find that the trial court erred in finding her forty percent comparatively negligent for impliedly assuming the risk of her injuries. However, because we have determined that ODOT was not negligent, the issue of her comparative negligence as it relates to her cause of action against ODOT is moot. State Farm, which "stood in the place" of Erin through rights of subrogation, did not appeal the finding that Erin was forty percent negligent as it related to its recovery against Jason.
In Jason Cruit's and State Farm's second assignments of error, they argue that the finding of the trial court that ODOT's negligence did not proximately cause the accident was against the manifest weight of the evidence. In a negligence action, every element must be proven to prevail. Thus, because we have already found that ODOT did not breach its duty to appellants, the issue of proximate cause is moot, and we decline to address it. See App.R. 12(A)(1)(c).
Jason Cruit argues in his third assignment of error that the trial court's decision finding him sixty percent negligent was against the manifest weight of the evidence. The trial court found Jason was negligent and rendered judgment in favor of State Farm for its action against Jason for recovery of monies paid to State Farm's insured, Erin Drown, pursuant to the uninsured motorist provision of an automobile insurance policy. In finding Jason negligent, the trial court reasoned that: (1) Jason was familiar with this route, and his testimony that he had never traveled on SR 83 was not credible; (2) Jason made no attempt to apply his brakes or slow prior to reaching the hillcrest; (3) Jason was in violation of R.C. 4511.202 for failing to maintain control of the motorcycle, and he was cited for such violation; (4) the Highway Patrol determined that a contributing factor to the accident was unsafe speed; and (5) ODOT's expert opined that the cause of the accident was Jason's failure to reduce his speed in order that he may negotiate the turn safely. After reviewing the evidence, we find there was competent, credible evidence to support the trial court's finding that Jason was negligent in the operation of his motorcycle.
Although Jason testified that he had never previously traveled the area of SR 83 where the accident occurred, his testimony was directly controverted by Mr. Butcher, who testified that he and Jason had ridden their motorcycles on SR 83 in the late summer of 1993 on their way to Johnny Appleseed Drive. Mr. Butcher stated that Jason twice drove through the area where he had his accident — once on the way to Johnny Appleseed Drive and once on the way back. Further, Erin had told a trooper while she was in the hospital the night of the accident that Jason "always" drove down SR 83. She testified that because she was sedated she did not remember giving the statement to the trooper and that the statement that Jason had driven on that portion of SR 83 before the accident was incorrect. However, Erin testified that every other answer she had given to the trooper while she was in the hospital that night was correct. The trial court is in the best position to judge the demeanor and credibility of the witnesses, and there was competent, credible evidence to support the trial court's finding that Jason had previously driven in the area where he later had an accident.
In finding Jason negligent, the trial court also found that Jason did not slow down as he approached the hillcrest and was subsequently cited for failure to control the motorcycle, with the State Highway Patrol indicating unsafe speed to be a contributing factor. We find that there was competent, credible evidence supporting these findings by the trial court. Jason testified on several occasions that he did not slow down as he climbed the hill toward the crest. Jason was also cited pursuant to R.C. 4511.202 for failure to maintain control of the motorcycle. Further, page two of the State Highway Patrol accident report indicates that unsafe speed was a contributing factor to the accident.
In addition, the trial court relied upon the testimony of Warner Riley, ODOT's accident reconstruction/motorcycle handling expert, in finding Jason negligent. Mr. Riley testified that if the motorcycle would have been travelling at 55 miles per hour, it would have had to have leaned eighteen degrees in order to make the turn, which is not a difficult maneuver for an experienced cyclist on this type of motorcycle. Mr. Riley also testified that if Jason had been travelling 55 miles per hour, Jason would have had sufficient time to make the maneuver through the left curve and even to apply the brakes to stop the motorcycle before going off the road or striking the guardrail. He stated that increased speed and inattention would have shortened the amount of distance and time one would have had to perceive and react to the curve in the road. Further, Mr. Riley added that even if there had been no left-reverse warning sign in place the night of Jason's accident, Jason should have been able to safely negotiate the curve based upon the speed limit and visual cues. Based upon a reasonable degree of engineering probability, Mr. Riley opined that the cause of the accident was excessive speed and/or inattention by Jason.
Jason argues that the trial court erred in finding that he should have reduced his speed in order to maintain control of his motorcycle because he was travelling at the legal speed limit. However, in Stonerock v. Miller Bros. Paving (1991),72 Ohio App.3d 123, we noted that "given the circumstances of any individual case, the operation of a motor vehicle, even if being driven below the posted speed limit, may be unreasonable given the circumstances which exist." Stonerock, at 136. The mere fact that, according to Mr. Riley's expert testimony, Jason would have had sufficient time to make the maneuver through the left curve and even to apply the brakes to stop the motorcycle before going off the road or striking the guardrail is a very strong indicator that Jason's speed, whether fifty-five miles per hour, sixty miles per hour, or below the speed limit, was, nevertheless, unreasonably fast in order to maintain control of his motorcycle.
Jason further argues that the common-law duty of reasonable care that one has the responsibility to observe the environment in which one is driving is inapplicable to this case because there was no sign warning him of the left curve. Jason asserts that because there was no sign, he did not have a chance to stay on the highway. However, Mr. Riley testified that even if there had been no left-reverse warning sign in place the night of Jason's accident, Jason would have been able to safely negotiate the curve based upon the speed limit and visual cues.
After reviewing the evidence and the entire record in this case, and in accordance with the standard of review we must follow, we find that there was competent, credible evidence that Jason was negligent in the operation of his motorcycle. Therefore, we find that the trial court's finding on this issue was not against the manifest weight of the evidence, and Jason's third assignment of error is overruled.
We further note that because we have found that ODOT did not breach its duty to appellants and was, thus, not negligent, the issue of the actual percentage of Jason's comparative negligence as it relates to his third-party complaint against ODOT is moot, and we decline to address it. See App.R. 12(A)(1)(c).
Accordingly, State Farm's first assignment of error, Jason Cruit's first and third assignments of error, and Erin Drown's assignment of error are overruled, Jason's and State Farm's second assignments of error are moot, and the judgment of the Court of Claims of Ohio is affirmed.
Judgment affirmed.
BOWMAN and BRYANT, JJ., concur.