521 A.2d 25

**Andrew WILKERSON**

v.

**ALLIED VAN LINES, INC., Fruehauf Trailer, A Division of Fruehauf Corp.**

**Appeal of ALLIED VAN LINES, INC.**

Superior Court of Pennsylvania.

Argued Oct. 21, 1986.

Filed Feb. 6, 1987.

524

John J. O'Brien, Jr., Philadelphia, for appellant.

Paul R. Anapol, Philadelphia, for Wilkerson, appellee.

James M. Marsh, Philadelphia, for Fruehauf, appellee.

Before WIEAND, OLSZEWSKI and CERCONE, JJ.

WIEAND, Judge:

Andrew Wilkerson was seriously injured when he was ejected from a tractor trailer which collided with an oncoming vehicle in Vernon Township, New Jersey. The tractor trailer was owned and operated by Lyle Jordan. The unit had been leased to Fisher and Brother, Inc., which, in turn, had leased the vehicle to Allied Van Lines, Inc. (Allied). The vehicle was being operated under authority contained in a Certificate of Convenience and Necessity which had been issued to Allied by the Interstate Commerce Commission. Wilkerson commenced an action against Allied and also against Fruehauf Trailer, a division of Fruehauf Corporation, which had been hired by Allied to inspect and repair the vehicle's braking system but which, it was alleged, had done so in a negligent manner. A jury returned a verdict

against Allied alone [1] and awarded damages of $800,000.00. The trial court added delay damages pursuant to Pa.R.C.P. 238 and, after post-trial motions had been denied, judgment was entered in favor of Wilkerson and against Allied in the amount of $1,182,027.36. Allied appealed.

Wilkerson's claim against Allied was based upon provisions of the Interstate Common Carrier Act which requires that a motor carrier assume direction and control of leased vehicles. This principle was explained by the Court of Appeals for the Fifth Circuit in *Price v. Westmoreland*, 727 F.2d 494 (5th Cir.1984) as follows:

> In order to protect the public from the tortious conduct of judgment-proof operators of interstate motor carrier vehicles, Congress in 1956 amended the Interstate Common Carrier Act to require a motor carrier to assume full direction and control of leased vehicles. 49 U.S.C. §§ 10927(a)(2) and 11107(a)(4) (formerly 49 U.S.C. §§ 315 and 304(e)(2) respectively). Pursuant to these regulations the ICC has promulgated written lease requirements for interstate carriers ... which require the carrier lessee to "assume complete responsibility for the operation of the equipment for the duration of the lease." 49 C.F.R. § 1057.12(d)(1).

*Id.* at 496.[2] See: *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.*, 423 U.S. 28, 36–38, 96

---

**1.** Fruehauf settled the claim prior to trial and took in exchange a joint tortfeasor's release. However, it remained in the action as a party-defendant throughout the trial.

**2.** See: 49 U.S.C. § 11107; 49 C.F.R. 1057.
49 U.S.C. § 11107 provides in relevant part:
[T]he Interstate Commerce Commission may require a motor carrier providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title that uses motor vehicles not owned by it to transport property under an arrangement with another party to—
(1) make the arrangement in writing signed by the parties specifying its duration and the compensation to be paid by the motor carrier;

·    ·    ·    ·    ·

(4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary of Transportation on safety of operations and equipment, and

S.Ct. 229, 233–234, 46 L.Ed.2d 169, 176–177 (1975); *Rodriguez v. Ager,* 705 F.2d 1229, 1232–1233 (10th Cir.1983); *White v. Excalibur Insurance Co.,* 599 F.2d 50, 52–53 (5th Cir.), *cert. denied,* 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979); *Carolina Casualty Insurance Co. v. Insurance Co. of North America,* 595 F.2d 128, 135–137 (3d Cir.1979); *Proctor v. Colonial Refrigerated Transportation, Inc.,* 494 F.2d 89, 91–92 (4th Cir.1973); *Simmons v. King,* 478 F.2d 857, 866–867 (5th Cir.1973); *Mellon National Bank & Trust Co. v. Sophie Lines, Inc.,* 289 F.2d 473, 477 (3d Cir.1961); *Riddle v. Trans-Cold Express, Inc.,* 530 F.Supp. 186, 188 (S.D.Ill.1982).

■ Because the statute and the regulations adopted pursuant thereto impose upon the carrier "both a legal right and duty to control vehicles operated for its benefit, the employees of the vehicle-lessor are deemed statutory employees of the lessee-carrier to the extent necessary to insure the carrier's responsibility for the public safety just as if the lessee-carrier were the owner of the vehicles." *White v. Excalibur Insurance Co., supra* at 53, citing *Simmons v. King, supra.* The effect of the statutes and regulations is to make the carrier-lessee vicariously liable for injuries caused to the traveling public by virtue of the negligent operation of any vehicle leased to it and operated under its certificate of necessity. See: *Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc., supra; Price v. Westmoreland, supra; White v. Excalibur*

with other applicable law as if the motor vehicles were owned by the motor carrier.

The applicable regulation provides:

Except as provided in the exemptions set forth in Subpart C of this part, the written lease required under § 1057.11(a) shall contain the following provisions. The required lease provisions shall be adhered to and performed by the authorized carrier.

. . . .

(c) **Exclusive possession and responsibilities**—(1) The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

49 C.F.R. 1057.12.

*Insurance Co., supra; Mellon National Bank & Trust Co. v. Sophie Lines, Inc., supra; Riddle v. Trans-Cold Express, Inc., supra; Matkins v. Zero Refrigerated Lines, Inc.,* 93 N.Mex. 511, 516, 602 P.2d 195, 200 (1979).

Allied contends in this case that it should not be held vicariously liable for the negligence of Jordan because Wilkerson was not "a member of the traveling public" which the statute and regulations were intended to protect. Wilkerson made a living by helping drivers load and unload their tractor trailers. On the day of the accident, he had been engaged in helping Jordan in the loading and unloading of Jordan's tractor trailer. After work for the day had been completed, Jordan provided transportation to Wilkerson so that Wilkerson could reach a destination convenient to him. It was then that the accident occurred.

Whether an injured plaintiff is "a member of the traveling public" at the time of the accident and, therefore, eligible to assert the federally created cause of action against the lessee-carrier, has been a source of conflict among the federal courts. In *Proctor v. Colonial Refrigerated Transportation, Inc., supra,* plaintiff had been injured while riding as a passenger in a truck which had been leased to Colonial, an interstate carrier, by Bales, the owner-operator of the truck. Bales had hired Proctor, the plaintiff, as an assistant driver. Proctor brought an action for personal injuries against Colonial. At trial, the court instructed the jurors that if they found that Bales was an independent contractor at the time of the accident, they should return a verdict in favor of Colonial. On appeal, after the jury had returned a verdict for Colonial, the Court of Appeals reversed. The Court held that federal law operated to eliminate independent contractor concepts and required Colonial to assume responsibility for the negligence of Bales as the driver of the leased vehicle. *Id.* at 92. With respect to Colonial's contention that its statutory liability did not extend to plaintiff, who had been injured while acting as an employee of the lessor, Bales, the Court emphasized that plaintiff had not been the owner of the

vehicle and had had no contractual relationship with Colonial. The Court concluded that plaintiff "was as much a stranger to Colonial as a shipper or a member of the traveling public...." *Id.* The Court held, therefore, that a new trial was necessary at which the jury should be instructed that any negligence on the part of the driver, Bales, would impose liability upon Colonial, the lessee.[3]

A contrary result was reached by the Court of Appeals for the Fifth Circuit on similar facts. In *White v. Excalibur Insurance Co., supra,* the plaintiff's decedent had been hired as a driver by the lessor-owner of a truck which had been leased to the lessee-carrier. As the decedent slept in the cab, his co-driver negligently operated the truck, resulting in a collision which caused the decedent's death. Plaintiff brought a wrongful death action against the lessee-carrier, contending that federal law made the carrier vicariously liable for the driver's negligence. The trial court denied plaintiff's request for relief and, on appeal, the Court of Appeals affirmed. Inasmuch as the decedent had been an employee of the lessor at the time of the accident, the Court held, he had not been a member of the public when he was injured. The Court said that despite the absence of a contractual agreement between the carrier and the lessor's employees, the employees could not be considered to have been strangers to the lease when engaged in operating a leased vehicle in furtherance of the lessee's business. *Id.* at 55–56. Thus, the Court concluded, "[t]hey stood [apart] not merely from other travelers but from all of the rest of the public who [were] not directly engaged in furthering the economic interest of the carrier...." *Id.* at 56.

Two state courts have had occasion to consider this issue. Both have embraced the reasoning of the Fourth Circuit.

---

**3.** Several courts, including the Fourth Circuit, have held, however, that the lessor himself cannot be considered to be a member of the traveling public and, therefore, cannot hold the lessee responsible under federal law for injuries sustained by the lessor as a result of the negligence of his own employees. See: *War Emergency Co-op Association v. Widenhouse,* 169 F.2d 403 (4th Cir.1948); *Riddle v. Trans-Cold Express, Inc., supra.*

In *Schindele v. Ulrich*, 268 N.W.2d 547 (Minn.), *appeal dismissed sub nom., Sammons v. Schindele*, 439 U.S. 1059, 99 S.Ct. 739, 58 L.Ed.2d 716 (1978), the plaintiff and another person had been hired by the lessor to drive a truck which had been leased to an interstate carrier. Plaintiff was injured when his co-driver negligently drove the truck at a high rate of speed down a steep hill, causing an accident. In response to a contention by the carrier that it should not be held liable for plaintiff's injury because plaintiff had been an employee of the lessor at the time of the accident, the Supreme Court of Minnesota, relying upon *Proctor v. Colonial Refrigerated Transportation, Inc., supra*, decided: "Like the Court in *Proctor*, we think the lessee's assumption of 'full responsibility in respect to the equipment it is operating' requires it to assume liability to a codriver for injury caused by the driver's negligence." *Id.* at 551.

Similarly in *Matkins v. Zero Refrigerated Lines, Inc., supra*, the Court of Appeals of New Mexico held that a lessee-carrier was liable for the damages caused when an employee of the lessor was killed while riding in a leased vehicle. There, the injured employee had been hired by the lessor as an assistant driver and was killed when his co-driver negligently operated the vehicle. The Court, referring approvingly to *Proctor v. Colonial Refrigerated Transportation Lines, Inc., supra*, concluded:

One of the principal goals of the ICC regulation imposing responsibility on the carrier was to provide the public with financially responsible carriers. *Indiana Refrigerator Lines, Inc. v. Dalton*, 516 F.2d 795 (6th Cir.1975)[, *cert. denied*, 423 U.S. 985, 96 S.Ct. 392, 46 L.Ed.2d 302 (1975) ]. In acknowledgment of that purpose, *Proctor* reasoned that plaintiff, although an employee of the negligent driver and a passenger in the truck driven by him, was as entitled to the protection intended by the Commission's regulations as any other member of the traveling public. We feel that plaintiff here, representing the estate of deceased, is entitled to the same protection

under the ICC regulations, and to deny him the right to seek recovery from the carrier would undercut one of the primary purposes of the regulatory pattern.

*Matkins v. Zero Refrigerated Lines, Inc., supra* 93 N.Mex. at 516, 602 P.2d at 200.

■ We agree with this view. We do so because such a view is consistent with the purposes sought to be achieved by the federal law. To hold that Wilkerson was not entitled to recover from the carrier under whose certificate of necessity the truck was being operated would defeat the salutary purpose of ensuring compensation for innocent persons who have been injured as a consequence of the carrier's doing business. Although it is true that Jordan, as lessor, could not have recovered from the carrier if he had been injured by his own negligence, or the negligence of one of his employees, Wilkerson had no direct relationship with the carrier and no ownership interest in the leased vehicle. Therefore, he was a member of the public intended to be benefitted by the vicarious liability provisions of federal law. He was a member of the public within the intendment of federal law, and, as such, could recover against Allied for the negligence of Jordan.

■ Allied also contends that a new trial is necessary because of various alleged errors by the trial court. We will consider these arguments seriatim. The first is that the trial court erred when it permitted a police officer to testify regarding a report which had been prepared by the New Jersey Department of Law and Safety and which the officer had attached to his accident report. The report contained a statement that there had been no apparent defect in the truck's braking system. This information, Allied contends on appeal, was inadmissible hearsay. The objection, however, was waived. Allied sat silently by and waited until the officer had completed his testimony on direct examination. It was not until much later, after Allied's counsel had begun to cross-examine the witness, that an objection was made to the testimony which he had given on direct examination. This was too late. The objec-

tion was waived. See: *Kemp v. Qualls,* 326 Pa.Super. 319, 327, 473 A.2d 1369, 1373 (1984). See also: *Richardson v. LaBuz,* 81 Pa.Cmwlth. 436, 462, 474 A.2d 1181, 1197–1198 (1984).

■ Allied contends also that the trial court erred when it excluded testimony regarding the police officer's notation on his written report of a statement attributed to Long that the brakes on his truck had failed prior to the accident. This evidence was hearsay; and the recordation of the statement on the police report was not admissible as a business record exception to the exclusionary rule. See: *Haas v. Kasnot,* 371 Pa. 580, 92 A.2d 171 (1952). See also: McCormick on Evidence §§ 310, 324.3 (3d ed. 1984). Allied argues that even if the evidence were hearsay, the trial court should have allowed it because the police witness had previously been allowed to refer to the report which had been made about the braking system by the New Jersey Department of Law and Safety. We reject this logic. A trial court's evidentiary rulings, if preserved for appellate review, will be tested according to established rules of evidence and not necessarily by prior rulings, correct or incorrect, made by a trial court in the same action.

■ The trial court did not err when it refused to allow evidence of the pre-trial settlement agreement between Wilkerson and Fruehauf. The trial court's ruling was mandated by the provisions of 42 Pa.C.S. § 6141(c), which direct that "[e]xcept in an action in which final settlement and release has been pleaded as a complete defense, any settlement ... shall not be admissible in evidence on the trial of any matter." See also: *Weingrad v. Philadelphia Electric Co.,* 324 Pa.Super. 16, 471 A.2d 100 (1984) (error for trial court to inform jury of settlement, but error harmless). Appellant contends that the statute should be interpreted to create an exception where a settlement may be relevant to attack the credibility of testimony given by a settling party by showing bias, prejudice or interest. Appellant relies upon dictum appearing in footnote 3 which accompanied the panel opinion in *Weingrad v. Philadelphia Electric Co.,*

*supra.* However, even that panel recognized the inflexibility of the Pennsylvania statutory provision and opined only that "the public policy of promoting settlements would not be frustrated by a law ... which permits the admission of settlements when offered to prove bias or prejudice of a witness." *Id.*, 324 Pa.Superior Ct. at 20–21 n. 3, 471 A.2d at 102–103 n. 3. The trial court did not err when it refused to permit the jury to learn that the claim against Fruehauf had been settled.

■ In response to pre-trial interrogatories which had been filed pursuant to Pa.R.C.P. 4003.5(a), Wilkerson stated that he intended to call an expert who had examined the Jordan vehicle and had concluded that Fruehauf's inspection of the braking system prior to the accident was "completely inadequate." Wilkerson also gave Allied a copy of the expert's written report. When Wilkerson failed to call the named expert witness at trial, Allied offered the expert's written report in evidence. The trial court rejected Allied's offer, holding that the report constituted hearsay and did not fall within any exception to the rule excluding hearsay evidence. Allied contends that this was error. It argues that because the witness was a resident of Georgia and beyond the subpoena powers of the Pennsylvania court, the expert's written report was admissible pursuant to Pa.R. C.P. 4020.

Pa.R.C.P. 4020 provides as follows:

(a) At the trial, any part or all of a deposition, so far as admissible under the rules of evidence, may be used against any party who was present or represented at the taking of the deposition or who had notice thereof if required, in accordance with any one of the following provisions:

.  .  .  .  .

(2) The deposition of a party ... may be used by an adverse party for any purpose.

(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds

.     .     .     .     .

(b) that the witness is at a greater distance than one hundred (100) miles from the place of trial or is outside the Commonwealth, unless it appears that the absence of the witness was procured by the party offering the deposition....

This rule, however, is not applicable to and does not support appellant's argument. In the first place, the written report which appellant sought to introduce had not been prepared by a party to the litigation. Secondly, as the trial court correctly observed, the written report was hearsay. It was an extrajudicial statement offered to show the truth of the statement made by the witness. See: *Spotts v. Reidell,* 345 Pa.Super. 37, 42, 497 A.2d 630, 633 (1985). The witness had never been deposed. He had not testified under oath and his opinion had not been tested by cross-examination.

Allied argues that the report was not inadmissible hearsay but an admission, which is an exception to the hearsay exclusion. By referring to it in his answer to interrogatories, it is argued, Wilkerson adopted the written report of its expert witness, which thereupon became admissible at Allied's instance as an admission by adoption by Wilkerson. In support of this argument, Allied cites *In re Japanese Electronic Products Antitrust Litigation,* 723 F.2d 238 (3d Cir.1983), *reversed in part on other grounds sub nom., Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). There, the Third Circuit Court of Appeals held that where a party answers interrogatories requesting factual information by referring to written documents, the interrogating party is entitled to assume that the contents of the documents have been adopted as the answer to the interrogatory. Moreover, the Court held, the answering party is estopped from denying the adoption. *Id.* at 301.

We agree that as a general rule, when a party answers an interrogatory requesting factual data by referring to a document, the opposing party is justified in assuming that the answering party has adopted the contents of the document. Under such circumstances, the party who referred to the document may be estopped from denying his admission of the facts recited therein. However, such a rule has no application to the instant case. Here, the only factual information requested was the name of Wilkerson's expert witness and a copy of his written opinion. Wilkerson supplied the requested information as he was required to do by Pa.R.C.P. 4003.5(a). He did not thereby adopt by admission the opinion of the expert witness whose name he had revealed. If Allied wished to pursue further its inquiry regarding the expert's opinion, it could have done so in various ways. Its failure to do so did not render the expert's written report admissible as an admission by the party who had consulted him. That report was hearsay and was properly excluded by the trial court.

Allied also contends (1) that the trial court erred by excluding a portion of Allied's response to Wilkerson's request for admissions before permitting the response to be read into evidence; and (2) that Wilkerson committed a fraud upon the court by testifying falsely at trial. Our examination of the record and relevant case law reveals that these issues are lacking in merit and deserve no discussion beyond that appearing in the trial court's opinion.

■ Allied's remaining assignments of error pertain to the trial court's jury instructions. In reviewing those instructions we are guided by the principle that "when the propriety of the jury instruction of the trial court is at issue, those instructions must be viewed *in toto* to determine if any error has been committed. Unless the charge as a whole can be demonstrated to have caused prejudicial error, we will not reverse for isolated inaccuracies." *Riddle Memorial Hospital v. Dohan*, 504 Pa. 571, 576, 475 A.2d 1314, 1316 (1984) (emphasis in original), citing *McCay v. Philadelphia Electric Co.*, 447 Pa. 490, 291 A.2d 759

(1972); *Vanic v. Ragni*, 435 Pa. 26, 254 A.2d 618 (1969). Moreover, unless a specific exception has been taken to an alleged error in the trial court's instructions, the alleged error will be deemed waived and will not be considered by a reviewing court. *Dilliplaine v. Lehigh Valley Trust Co.*, 457 Pa. 255, 322 A.2d 114 (1974); *Orlando v. Herco, Inc.*, 351 Pa.Super. 144, 505 A.2d 308 (1986); *Pratt v. Stein*, 298 Pa.Super. 92, 444 A.2d 674 (1982); *Crosbie v. Westinghouse Elevator Co.*, 297 Pa.Super. 304, 443 A.2d 849 (1982).

■ Allied's first objection to the court's charge is that the court gave the jury inadequate latitude to determine for itself whether Wilkerson had been a member of the traveling public. Although factual disputes were for the jury to resolve, the ultimate determination of whether Wilkerson was entitled, in view of the facts, to the benefit of the vicarious liability provisions of federal law and ICC regulations was an issue of law for the court. We have reviewed the facts and conclude that Wilkerson, as a matter of law, was a member of the traveling public. When the trial court left it to the jury to determine this issue, Allied received an instruction which was more favorable than it was entitled to receive. Therefore, Allied is not entitled to a new trial because the court left it to the jury, with careful instructions, to determine whether Wilkerson was a member of the traveling public.

The trial court told the jury that "[e]xperts for both [Wilkerson] and Allied agree that the cause of the accident was not a failure of the tractor brakes." This statement was inaccurate. Allied's expert had testified that the brakes were defective prior to the accident and also at the time when Fruehauf had made its inspection. A review of the trial transcript reveals, however, that despite opportunity to object, Allied failed to call this error to the attention of the trial court. The issue, therefore, was waived. Moreover, the effect of the court's jury instructions, when considered in their entirety, was to submit the brake issue to

the jury for determination.[4]   The court did not remove this issue from the jury's consideration.

Finally, Allied contends that the trial court (1) improperly withheld from the jury the issues of primary and secondary liability and joint venture status; and (2) improperly slanted its charge in favor of Wilkerson and Fruehauf and against Allied.   We have carefully reviewed the court's charge in light of Allied's arguments and conclude that no error was committed.   Allied's contention that a new trial is necessary, therefore, is without merit.

■   The final matter requiring review is the trial court's order adding delay damages pursuant to Pa.R.C.P. 238.   In *Craig v. Magee Memorial Rehabilitation Center*, 512 Pa. 60, 515 A.2d 1350 (1986), the Supreme Court suspended the mandatory provisions of Rule 238, holding that by assessing delay damages against tortfeasors without providing a forum to assess fault for the delay, "the ends sought [by the Rule] run too tight a gauntlet through Due Process...." *Id.*, 512 Pa. at 65, 515 A.2d at 1353.   In place of the suspended provisions of the Rule, the Court directed that claims for delay damages be presented by petition to the trial court for determination after hearing.   Although the suspension of Rule 238 is to be given prospective application, where the issue has been preserved, it is to be resolved in a manner consistent with the Supreme Court's decision. Our review of the record discloses that this issue was preserved by Allied at the time of trial and in post-trial motions.   Therefore, we will remand to the trial court to determine appellant's liability, if any, for delay damages in accordance with *Craig v. Magee Memorial Rehabilitation Center, supra.*

The portion of the judgment which exceeds $800,000.00 is vacated, and the case is remanded to the trial court to determine the delay damages, if any, which appellee is

---

4.   In its argument of this issue, Allied also alleges that the trial court improperly emphasized Fruehauf's defenses and evidence over that of Allied.   Our review of the court's charge fails to substantiate this allegation.

entitled to recover. As so modified, the judgment is affirmed. Jurisdiction is not retained pending determination of delay damages.