**Jerry F. SMITH, Plaintiff,**

v.

**Leroy JOHNSON, L.G. DeWitt Trucking Co., Inc., and Champ Enterprises, Inc., Defendants,**

v.

**ACADEMY TOURS AND TRAVEL CENTER, INC., Third–Party Defendant.**

No. 3:CV–92–1407.

United States District Court, M.D. Pennsylvania.

Sept. 1, 1994.

---

William S. Friedlander, Waverly, NY, for plaintiff.

Gary L. Weber, Richard A. Gray, Mitchell, Mitchell, Gray & Gallagher, Williamsport, PA, for defendant Johnson.

John E. Person, III, Williamsport, PA, for defendants L.G. DeWitt Trucking Co. and Champ Enterprises, Inc.

## MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

On October 6, 1992, plaintiff Jerry F. Smith initiated this action by filing a complaint which alleges negligence on the part of each of the defendants arising from a motor vehicle accident which occurred on July 8, 1992. Defendant Leroy Johnson was the operator of a tractor-trailer which was involved in the accident and in which Smith was a passenger. Defendant DeWitt Trucking Co. was the lessee of the truck and the company for which Johnson was driving the truck. Defendant Champ Enterprises was the lessor of the truck. Third-party defendant Academy Tours and Travel Center, Inc., is the owner of the bus which defendants contend caused the accident.

Before the court are: (1) a motion by Johnson for summary judgment; (2) a motion by Smith for summary judgment concerning a number of affirmative defenses raised by DeWitt and Champ; (3) a motion for summary judgment filed by DeWitt; and (4) a motion by Smith to strike affidavits.

### STATEMENT OF FACTS:

Prior to the accident, Smith was employed as a truck driver, but lost his commercial driver's license because of a requirement that all outstanding traffic tickets be paid before the license could be renewed. In order to earn income, Smith would accompany Johnson, a licensed driver, on his route. Upon arrival, Smith would act as a "lumper," a person hired solely to unload the truck. Smith at times would do some of the driving for Johnson, but was paid only for his role as

lumper. Johnson would pay Smith, but would be reimbursed by DeWitt.

Johnson was an employee of Champ at the time of the accident, but had previously been an employee of DeWitt. Champ provided Johnson to DeWitt to drive the tractor-trailer which Champ leased to DeWitt. Johnson's route was between Florida and Buffalo, New York.

On July 8, 1992, Smith was riding with Johnson in the Champ truck as it headed north on Pennsylvania Route 15 in Tioga County. Smith was in the sleeper bunk behind the cab while Johnson was driving. At a bridge on the road ahead, traffic had come to a standstill, perhaps because a bus owned by Academy had stopped to allow traffic to clear the bridge, fearing a sideswipe of oncoming traffic. As the truck came over the crest of a hill, it came upon the traffic which had stopped before the bridge. The truck driven by Johnson struck another tractor-trailer in the northbound lane, then crossed over into the southbound lane and struck two more tractor-trailers. Smith claims to have been injured in the accident.

*DISCUSSION:*

### I. MOTION TO STRIKE

The motion to strike affidavits will be addressed as an initial matter because the affidavits in question were submitted in support of DeWitt's motion for summary judgment.

Smith's motion to strike argues that DeWitt is precluded from submitting the affidavits by Local Rule 401.7, since renumbered to Local Rule 7.7, which reads:

Three (3) copies of a brief in reply to matters argued in respondent's brief may be filed by the moving party within ten (10) days after service of the respondent's brief. No further briefs may be filed without leave of court.

Smith argues that Rule 7.7 does not permit the movant to submit further documentation with its reply brief. However, Rule 7.7 does not specifically prohibit documentation accompanying the reply brief, nor should a movant be expected to anticipate (and therefore provide a reply and documentation for)

every argument or factual assertion made by the respondent in the respondent's brief in opposition to the motion. If the non-movant needs to respond to the additional documentation, Rule 7.7 allows the non-movant to seek leave of court to do so. The motion to strike will be denied.

### II. STANDARD OF REVIEW

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that *there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.*" Fed.R.Civ.P. 56(c) (emphasis added).

> ... [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

*Celotex v. Catrett,* 477 U.S. 317, 322–323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

The moving party bears the initial responsibility of stating the basis for its motions and identifying those portions of the record which demonstrate the absence of a genuine issue of material fact. He or she can discharge that burden by "showing ... that there is an absence of evidence to support the nonmoving party's case." *Celotex, supra,* 477 U.S. at 323, 325, 106 S.Ct. at 2552–2553, 2554.

Issues of fact are genuine "only if a reasonable jury, considering the evidence presented, could find for the non-moving party." *Childers v. Joseph,* 842 F.2d 689, 694 (3d

Cir.1988) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). Material facts are those which will affect the outcome of the trial under governing law. *Anderson, supra,* 477 U.S. at 248, 106 S.Ct. at 2510. In determining whether an issue of material fact exists, the court must consider all evidence in the light most favorable to the non-moving party. *White v. Westinghouse Electric Company,* 862 F.2d 56, 59 (3d Cir.1988).

### III. JOHNSON'S MOTION FOR SUMMARY JUDGMENT

■ Defendant Johnson's motion for summary judgment is based upon the Pennsylvania Workmen's Compensation Act, 77 Pa. Stat.Ann. §§ 1 et seq., the title since having been amended to the Pennsylvania Workers' Compensation Act. *See* 77 Pa.Stat.Ann. § 1, as amended, Pub.L. 190, No. 44, § 1 (July 2, 1993). Johnson points out that Smith's claims for damages are barred by his eligibility for Workers' Compensation benefits. 77 Pa.Stat.Ann. § 481(a).

Under the Workers' Compensation Act, an employer is liable for compensation for personal injury to an employee which occurs "in the course of his employment," with certain exceptions. 77 Pa.Stat.Ann. § 431. The parties argue over whether Smith was an employee of Champ and DeWitt, making him a co-employee of Johnson. If so, recovery against Johnson would be barred. 77 Pa. Stat.Ann. §§ 72, 481.

As noted, the briefs of Smith and Johnson focus on Smith's status as an employee for purposes of the Act. For present purposes, it may be presumed that Smith fit within the broad definition of "employe" provided in the Act. 77 Pa.Stat.Ann. § 22. It is obvious, however, that Smith's injury did not occur in the course of his employment.

Smith was paid by Johnson to work as a lumper, or a person who would unload a truck at a warehouse so that the driver could spend more time on the road. Smith was then reimbursed the amount he paid for lumpers.

At the time of the accident, Smith was not acting as a lumper. At best, he could be regarded as traveling to his place of employment, the warehouse which was their destination.

The Superior Court of Pennsylvania has discussed the concept of "the course of employment" as follows:

As a general rule the act of going to or returning from work does not constitute a furtherance of the employer's business. As such an employee so engaged is not engaged in the course of his employment. . . . However, this general rule is subject to exceptions and there is no general formula to determine readily whether an accident off the premises occurred in the course of employment. Cases involving this question must be disposed of on their own peculiar facts. . . .

*Sylvester v. Peruso,* 286 Pa.Super. 225, 428 A.2d 653, 655 (1981). In *Sylvester,* the transportation period was held to be within the course of employment because the employer had provided the service for a number of years (specifically, providing the vehicle, gasoline, and driver, and directing the driver to provide transportation). *Id.*

In the instant case, the vehicle was provided to Johnson for the purpose of transporting goods, not to provide Smith with a means to attend work. Nor can the provision of the vehicle to Johnson be part of an implied agreement to transport other employees to work, since the vehicle otherwise was necessary to perform the business of both DeWitt and Champ. Also, there was a prohibition by DeWitt regarding unauthorized passengers, although it may have been unevenly enforced. *See* Brief in Support of DeWitt's Motion for Summary Judgment; Plaintiff's Brief in Opposition to DeWitt's Motion for Summary Judgment. *See also Wilkerson, infra,* 521 A.2d at 28, 30 (plaintiff worked as a lumper, given a ride to a convenient location by driver after work and was injured in an accident; lumper was a "member of the traveling public").

■ In short, even if Smith was an employee for purposes of the Workers' Compensation Act, in no way can Smith be said to have been acting within the course of his employment. Therefore, the exclusivity pro-

visions of the Workers' Compensation Act do not bar Smith from proceeding against Johnson, even if Johnson is a co-employee. Johnson's motion for summary judgment will be denied.

### IV. DeWITT'S MOTION FOR SUMMARY JUDGMENT

■ In its motion for summary judgment, DeWitt contends that it is not liable to Smith because he was an unauthorized passenger. Under the common law unauthorized passenger doctrine, when the owner of a vehicle expressly prohibits its agents from carrying passengers, the unauthorized passenger may not recover for the negligence of the agent absent wanton or willful misconduct. *Noel v. Puckett,* 427 Pa. 328, 235 A.2d 380, 385 (1967).

■ Plaintiff contends that this common law doctrine is preempted by the regulations of the Interstate Commerce Commission regarding the liability of the lessee of a vehicle. Specifically, the operative regulation provides:

> The lease shall provide that the authorized carrier lessee shall have exclusive possession, control, and use of the equipment for the duration of the lease. The lease shall further provide that the authorized carrier lessee shall assume complete responsibility for the operation of the equipment for the duration of the lease.

49 C.F.R. § 1057.12(c)(1). "The effect of the statutes and regulations is to make the carrier-lessee vicariously liable for injuries caused to the traveling public by virtue of the negligent operation of any vehicle leased to it and operated under its certificate of necessity." *Wilkerson v. Allied Van Lines, Inc.,* 360 Pa.Super. 523, 521 A.2d 25, 28 (citing, *inter alia, Transamerican Freight Lines, Inc. v. Brada Miller Freight Systems, Inc.,* 423 U.S. 28, 96 S.Ct. 229, 46 L.Ed.2d 169 (1975)), *allocatur granted,* 517 Pa. 591, 594, 535 A.2d 81, 84 (1987), *allocatur dismissed after remand,* 518 Pa. 61, 540 A.2d 268 (1988).

DeWitt, for its part, argues that preemption by the regulations is contrary to the statute under which the regulations were promulgated, which reads in part:

> Except as provided in section 11101(c) of this title, the Interstate Commerce Commission may require a motor carrier providing transportation subject to the jurisdiction of the Commission under subchapter II of chapter 105 of this title that uses motor vehicles not owned by it to transport property under an arrangement with another party to—
>
> . . . . .
>
> (4) have control of and be responsible for operating those motor vehicles in compliance with requirements prescribed by the Secretary of Transportation on safety of operations and equipment, and with other applicable law as if the motor vehicles were owned by the motor carrier.

49 U.S.C. § 11107(a)(4). Concentrating on the final clause, DeWitt argues that the "other applicable law" is the unauthorized passenger doctrine. Since the owner of the vehicle would not be liable under that principle, and the lessee is treated "as if the motor vehicles were owned by" it, the lessee is not liable when the injured party is an unauthorized passenger.

■ This argument rests on a faulty premise. The ICC is empowered to promulgate regulations concerning the exclusive control and responsibility of leased vehicles, pursuant to § 11107. It has done so in the form of § 1057.12(c)(1), among others. Common law principles which are inconsistent with the regulations are preempted by the regulations. Section 1057.12(c)(1) does not permit an exception for the unauthorized passenger doctrine, and the doctrine is inconsistent with § 1057.12(c)(1). Thus, the doctrine is preempted by the regulation. The unauthorized passenger doctrine therefore is not "applicable law" under § 11107(a)(4).

DeWitt's argument also misconstrues the language, (more specifically, the punctuation) of the above-quoted provision. The clause "as if the motor vehicles were owned by the motor carrier" modifies the phrase "and with other applicable law." The comma after the word "equipment" (which is missing from DeWitt's quotation of this passage) separates the clause referring to the ICC regulations

from "and with other applicable law," so that "as if the motor vehicles were owned by the motor carrier" does not modify the clause concerning the ICC regulations. In other words, the lessee is responsible for compliance with: (1) ICC regulations, and (2) other applicable law as if the lessee is the owner of the vehicle.

Moreover, the latter requirement stated in the quoted provision indicates that a lessee must comply with other applicable law as if it were the owner, not that it is liable as if it were the owner. And it certainly does not say that if a rule of law in a particular state allows an owner to avoid liability, the lessee may avoid liability under the same rule of law.

To all of this we would note that the court in *Wilkerson, supra,* reviewed several federal cases on the issue of individuals who fall within the concept of "members of the traveling public" who are protected under the ICC regulations. 521 A.2d at 28–30 (discussing *Proctor v. Colonial Refrigerated Transportation, Inc.,* 494 F.2d 89 (4th Cir.1974); *White v. Excalibur Insurance Co.,* 599 F.2d 50 (5th Cir.), *cert. denied,* 444 U.S. 965, 100 S.Ct. 452, 62 L.Ed.2d 377 (1979); also noting that the Fourth Circuit's holding was adopted in *Schindele v. Ulrich,* 268 N.W.2d 547 (Minn.), *appeal dismissed sub nom. Sammons v. Schindele,* 439 U.S. 1059, 99 S.Ct. 739, 58 L.Ed.2d 716 (1978); and *Matkins v. Zero Refrigerated Lines, Inc.,* 93 N.M. 511, 602 P.2d 195 (1979)).

■ The only difference between *Wilkerson* and the instant case appears to be that the plaintiff in *Wilkerson* was leaving the warehouse site at which he had worked as a lumper, while Smith was on his way to a warehouse site at which he would work as a lumper. Like the Pennsylvania Superior Court, we hold that a lumper is a member of the traveling public when a driver provides a ride which is not in the course of the lumper's employment.

Since we find that the ICC regulations are the applicable law, we do not address the parties' arguments concerning conflict of laws among the States of Florida, North Carolina, and Pennsylvania.

For these reasons, DeWitt's motion for summary judgment will be denied.

## V. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

In his motion for summary judgment plaintiff seeks:

to strike the following affirmative defenses of ("Dewitt") [sic] and ("Champ") [sic]:

(1) Smith was an unauthorized passenger;

(2) Smith is limited to his worker's compensation remedies, because he was Johnson's co-driver or co-employee at the time of accident (implying that is a Champ employee);

(3) Smith's claims are barred by ICC provisions, rules and regulations;

(4) Johnson violated company rules regarding unauthorized passengers and was acting outside the scope of his employment with DeWitt and Champ;

(5) Smith is barred or estopped from asserting his claims because he knew he was an unauthorized passenger; and

(6) Smith's claims are barred because he and Johnson were engaged in a joint venture, joint enterprise and/or a common enterprise in the operation of the tractor-trailer and delivery of goods, and therefore Johnson's negligence is imputed to Smith.

and cross-moves as against Leroy Johnson for an Order of partial summary judgment, dismissing the affirmative defense that Smith is limited to his worker's compensation remedies,

.    .    .    .    .

Plaintiff's Motion for Summary Judgment at 2.

■ Most of these issues are discussed above, with holdings in favor of plaintiff. The only remaining issue is that of the joint venture/joint enterprise/common enterprise as an affirmative defense.

The parties appear to agree as to what factors are essential to a joint venture:

To constitute a joint venture certain factors are essential: (1) each party to the

venture must make a contribution, not necessarily of capital, but by way of services, skill, knowledge, materials or money; (2) profits must be shared among the parties; (3) there must be a 'joint proprietary interest and right of mutual control over the subject matter' of the enterprise; (4) usually, there is a single business transaction rather than a general and continuous transaction.

*Snellbaker v. Herrmann,* 315 Pa.Super. 520, 462 A.2d 713, 716 (1983) (quoting *McRoberts v. Phelps,* 391 Pa. 591, 138 A.2d 439, 443–444 (1958)).

The conduct of plaintiff and Johnson in driving to warehouses where plaintiff would work as a lumper does not fit within the traditional concept of a joint venture. This is not an instance in which the pair delivered goods and were paid either for the goods or the delivery. Rather, DeWitt was paid for the delivery, and Johnson was paid a regular salary. Plaintiff was not even paid for his driving services; rather, he was paid for unloading the truck. While the deliveries may have been profitable to both plaintiff and Johnson, there is hardly the sharing of profits characteristic of a joint venture.

Moreover, there is not the control over the subject matter of the enterprise. There is no indication that plaintiff had full control over the truck. He had limited control over the handling of the truck when he was driving, but would have been directed as to where to go. The same is true of Johnson: DeWitt had control over the use to which the truck would be put. There was neither the joint proprietary interest nor joint control over the truck or the goods being transported.

Since no joint venture existed, there can be no imputation of liability, and plaintiff's motion for summary judgment will be granted.

## VI. CONCLUSION

For the reasons set forth above, plaintiff's motion to strike will be denied, the motions for summary judgment filed by DeWitt and Johnson will be denied, and plaintiff's motion for summary judgment will be granted.