**Haq v. Novak**

80

*Richard A. Stoloff,* for plaintiffs.
*David L. Rohde,* for defendants.

BERNSTEIN, *J.,* December 8, 2006—

## FACTUAL BACKGROUND

On May 5, 2002, plaintiffs Mohammad Haq and Arjumand Haq, were injured in a car accident with defendant, Tony Novak. Mohammad Haq was driving his van with his wife, Arjumand Haq, in the front passenger seat. The plaintiffs had just driven through the toll booth on the Walt Whitman Bridge, heading from Pennsylvania to New Jersey, when they were forced to stop due to traffic. The portion of the bridge is located closer to Philadelphia than New Jersey. While at a complete stop, plaintiffs' vehicle was hit in the rear by a vehicle owned and operated by the defendant. As a result of the collision, Mr. Haq sustained cervical disc protrusions which plaintiffs' expert, Dr. Martin Kessler testified are "per-

manent in nature." These injuries required Mr. Haq to have physical therapy and injections. Plaintiffs' expert, Dr. Peter Corda, testified that Mrs. Haq suffered herniated discs with an annular tear requiring physical therapy, epidural steroid injections and a percutaneous discectomy via nucleoplasty. Dr. Corda further testified that these injuries are permanent.

In February 2005, plaintiffs' counsel received, by mail, a copy of the interrogatories that they had sent to defense counsel for the defendant to answer. These interrogatories contained the defendant's handwritten answers to each question along with a signed and dated verification by the defendant. Subsequently, plaintiffs' counsel was sent a second set of interrogatory answers by defense counsel that was typewritten and also contained a verification. Some of the defendant's answers to the typewritten interrogatory were different from those contained on the handwritten interrogatory. At trial, the defendant testified that the bumper of his car never made contact with the bumper of the plaintiffs' vehicle, consistent with the answers he provided on the typewritten interrogatory, but different from the answers on the handwritten interrogatories.[1] During cross-examination the defendant was asked if his answers to the handwritten interrogatory were true and he replied yes.[2] The court also questioned the plaintiff as to the truthfulness of his handwritten answers and he confirmed, once again, that his answers were true.[3] Plaintiffs' counsel used the defendant's an-

---

1. N.T., December 12, 2005, p. 21.
2. N.T., December 12, 2005, p. 22.
3. N.T., December 12, 2005, p. 26.

swer in the handwritten interrogatory that his bumper had come into contact with the plaintiffs' bumper.

## PROCEDURAL HISTORY

Plaintiffs originally filed suit in the Superior Court of New Jersey on March 10, 2004. That suit was voluntarily dismissed by the plaintiffs when they filed a complaint in Philadelphia on April 27, 2004. On February 25, 2005, the defendant filed preliminary objections to the plaintiffs' complaint arguing that the plaintiffs had failed to properly serve the defendant with the complaint and that Philadelphia County did not have jurisdiction over the matter. The plaintiffs filed an amended complaint on March 17, 2005, in response to the defendant's preliminary objections. The defendant's motion to determine preliminary objections was withdrawn as moot on March 28, 2005. On April 5, 2005, the defendant filed preliminary objections to the plaintiffs' amended complaint, again alleging improper service and lack of jurisdiction. The plaintiffs' response was filed on April 25, 2005 and on June 9, 2005, the defendant's preliminary objections which had been filed on April 5, 2005 were denied.

On June 16, 2005, the plaintiffs filed a second amended complaint that alleged further negligence on the part of the defendant. The defendant filed an answer to the second amended complaint on June 27, 2005 and filed new matter alleging that plaintiffs' claim should: (1) be barred or subject to reduction by Pennsylvania's Comparative Negligence Act, the New Jersey No Fault Act, the New Jersey Automobile Reparation Act, the New Jersey Comparative Negligence Act and the New Jersey Collateral Source Statute and (2) that the defendant asserts all the defenses available under the Pennsylvania

Motor Vehicle Financial Responsibility Law and the New Jersey Motor Vehicle Code. The plaintiffs filed a reply on August 8, 2005.

Before trial began, plaintiffs' counsel and defense counsel submitted proposed jury instructions and verdict sheets. The defendant failed to include any requests concerning limited tort in either his jury instructions or verdict sheet. The court submitted to the jury defendant's requested verdict sheet by agreement of counsel. Defendant was given two separate opportunities to object to his own proposed verdict sheet and he failed to do so.

Trial began on December 9, 2005. During the trial, two plaintiffs' experts testified as to the permanency of the injuries to the plaintiffs. Dr. Peter Corda, who treated plaintiff Arjumand Haq, testified that Ms. Haq suffered permanent injury as a result of the accident. Similarly, Dr. Martin Kessler, who treated plaintiff Mohammad Haq, testified that his injuries were "permanent in nature."

The jury reached a verdict on December 13, 2005, finding for plaintiff Arjumand Haq in the amount of $175,000 and for plaintiff Mohammad Haq in the amount of $7,500. Defendant filed a motion for post-trial relief in the form of a judgment n.o.v. or a new trial on December 30, 2005, objecting to: (1) the court's denial of the defendant's motion to dismiss the plaintiffs' complaint for failure to properly serve; (2) the court's refusal to charge the jury on the plaintiffs' tort option election; (3) the court charging the jury on the life expectancy of the plaintiffs; and (4) and the court's ruling that the defendant's handwritten interrogatory was not subject to the attorney-client privilege. On January 3, 2006, the plaintiffs responded to the defendant's motion for post-trial

relief and on August 1, 2006, the motion was denied. On August 18, 2006, judgment was entered in favor of the plaintiff on the verdict.

The issues raised on appeal are as follows: (1) whether this court erred in denying the defendant's motion to dismiss for lack of jurisdiction; (2) whether this court erred in refusing to charge the jury on the plaintiffs' tort option; (3) whether this court erred in ruling that the defendant's handwritten interrogatory was not protected by the attorney-client privilege; (4) whether this court erred in giving instructions on the plaintiffs' life expectancies; (5) whether the jury verdict was against the weight of the evidence; and (6) whether the jury verdict was disproportionately excessive.

## DISCUSSION

### 1. *Lack of Jurisdiction*

Pennsylvania had proper jurisdiction to decide this controversy.[4] Pa.R.C.P. 1006(a)(1) states that "an action against an individual may be brought in and only in a county in which . . . the individual may be served or in which the cause of action arose . . . ." The statute found at 36 Pa.C.S. §3401 et seq. confirms that Pennsylvania

---

4. The defendant is also alleging that the court erred in denying his motion to dismiss for improper venue. The defendant's argument as to improper venue is the same as his argument for lack of jurisdiction, alleging that, because this court did not have jurisdiction, Philadelphia could not have been the proper venue. Pa.R.C.P. 1006(a)(1) confirms that venue is proper in a county where the cause of action arose. Therefore, because this action took place on the Pennsylvania side of the Walt Whitman Bridge which is closest to the county of Philadelphia, Philadelphia is a proper venue for this action.

and New Jersey entered an agreement for joint ownership, jurisdiction and control over the bridges between Pennsylvania and New Jersey, including the Walt Whitman Bridge where the accident occurred. Pennsylvania and New Jersey courts both "enjoy and exercise a concurrent jurisdiction" over bridges operating between the two states.[5] The jurisdiction of the City of Philadelphia in fact extends all the way to where the bridge ends at the New Jersey shoreline.[6] Although it does not matter where the accident occurred on the bridge because Philadelphia properly has jurisdiction over accidents that occur on any part of any bridge between Pennsylvania and New Jersey, in fact, the accident occurred closer to Pennsylvania, on the Pennsylvania half of the river.

### 2. *Failure To Charge the Jury on Plaintiffs' Tort Option*

The jury was not charged on the plaintiffs' tort option. The defendant waived any request for such a jury instruction by failing to include any instruction on their proposed jury instructions or any question on their proposed verdict sheet and by failing to raise any objection to the verdict sheet or jury instructions as given to the jury. A party must "make a timely and specific objection to a jury instruction to preserve for review a claim that the jury charge was legally or factually flawed."[7] Defense counsel did not object at any time to the court's ruling

---

5. *Shulman Inc. v. Perskie,* 24 D.&C.2d 118, 120 (1960). See also, *Domenick v. Sigler,* 23 D.&C.3d 765 (1982).

6. *Shulman Inc. v. Perskie,* 24 D.&C.2d 118, 120 (1960).

7. *McManamon v. Washko,* 906 A.2d 1259, 1282 (Pa. Super. 2006).

that no jury instruction concerning tort option would be given.

Furthermore, defense counsel prepared the verdict sheet which was submitted to the jury and on which the jury verdict was recorded. It contained no interrogatory regarding any requirements concerning suit when a limited tort option defense had been raised. Defense counsel was given opportunities to object to the verdict sheet and did not do so.[8] Specifically, the court inquired as follows:

"The Court: I have your verdict interrogatory form—

"Mr. Rohde: Yes, your honor.

"The Court:—asking the court to use. Plaintiff's counsel says he agrees with it. This is the form, therefore, that we will use by agreement of counsel. Now, what question are you raising about limited tort?

"Mr. Rohde: It's not in here, judge.

"The Court: Well, it's not in the case. You're not asking the jury to ask any question about it. Are we ready to proceed?

"Mr. Rohde: Well, your honor, my video deposition isn't completed."[9]

The defense cannot object that an issue was not submitted on the verdict sheet when the defense proposed verdict sheet is submitted verbatim to the jury. The defendant waived any right to appeal the court's failure to charge the jury or submit a verdict interrogatory concerning any purported plaintiffs' tort option.

---

8. N.T., December 9, 2006, p. 5.
9. N.T., December 9, 2005, p. 5.

### 3. *Handwritten Interrogatory Not Protected by the Attorney-Client Privilege*

The court properly allowed the defendant's handwritten and verified answers to the interrogatory. The handwritten, verified answers are clearly an admission by a party admissible under Pa.R.E. 803(25). Pa.R.E. 803(25)(A) states that a party admission is an exception to the hearsay rule when the statement is made by the party and is being offered against that party. Interrogatory answers are evidentiary admissions and can be read to the jury.[10] In this case, the defendant's interrogatory responses were handwritten, contained a signed verification and the defendant testified during the trial that those answers were truthful.[11] This was clearly a truthful admission by a party. Having been sent directly to plaintiffs' counsel, this statement is clearly not protected by the attorney-client privilege. There was no error in allowing plaintiff to confront the defendant with a prior statement in order to demonstrate "inaccuracies" in his trial testimony.

### 4. *Jury Instructions on the Plaintiffs' Life Expectancies*

Two issues are raised with regard to the court instruction on life expectancy. The defense contends that there was no evidence regarding the plaintiffs' life expectancy. In this case, there was testimony by Dr. Peter Corda, who treated plaintiff Arjumand Haq, who testified that Ms. Haq suffered permanent injuries as a result of the accident. Similarly, Dr. Martin Kessler, who treated plaintiff

10. *Wilkerson v. Allied Van Lines Inc.,* 360 Pa. Super. 523, 536, 521 A.2d 25, 32 (1987).

11. N.T., December 12, 2005, p. 22.

Mohammad Haq, testified that his injuries were "permanent in nature." Pennsylvania Suggested Standard Civil Jury Instructions 6.21 states that if a jury finds that a plaintiff's injuries will continue "beyond today" they must consider the life expectancy of the plaintiff and therefore a jury charge regarding life expectancy is appropriate.

Furthermore, the court can take judicial notice of government life tables which show the statistical life expectancy of persons at various ages.[12] Therefore, the jury was properly instructed on life expectancy. If they agreed with the plaintiffs' experts and found that the plaintiffs' injuries would continue into the future, they would need to consider the plaintiffs' life expectancies.

The second issue with regard to the life expectancy charge was the claim that the court gave an inadequate instruction because the court did not inform the jury of all the factors which may affect the duration of the plaintiffs' lives. The general factors which affect life expectancy are known by everyone. Specific factors which may decrease either plaintiff's life expectancy in this case did require expert testimony by the defense which was not presented. Further, to appeal a jury charge, a party must make a timely and specific objection to the court's jury instructions.[13] At the initial charging conference, defense counsel did generally state that he had an exception to any life expectancy charge. However, the court replied there was nothing to take an exception

---

12. *Helm v. Eagle Downs-Keystone Racetrack,* 385 Pa. Super. 550, 561 A.2d 812 (1989).

13. *Dilliplaine v. Lehigh Valley Trust Company,* 457 Pa. 255, 322 A.2d 114 (1974).

about; the figures were either accurate or not accurate.[14] Defense counsel was told that the following day he would have the opportunity to either stipulate to the years provided by the life expectancy tables contained in the Standard Jury Instructions or provide the court with new life expectancy and he agreed. The next day the court gave defense counsel another opportunity to provide different life tables and he declined:

"The Court: Let's start with the life tables. Mr. Rohde, do you have different numbers from your review of the life tables?

"Mr. Rohde: No, your honor."[15]

Defense counsel was given yet another opportunity to object to the life tables when the jury instructions were completed but he failed to do so:

"The Court: Does counsel wish to see me at sidebar concerning the charge?

"Mr. Rohde: I don't, your honor."[16]

The defendant's right to appeal any error in the actual life expectancies given has been waived. Additionally, there was no error.

### 5. *Jury Verdict Was Against the Weight of the Evidence*

The jury verdict was not against the weight of the evidence. A new trial should only be awarded on the ground that the verdict is against the weight of the evidence when the verdict is so contrary to the evidence "as

---

14. N.T., December 12, 2005, pp. 111-12.

15. N.T., December 13, 2005, p. 8.

16. N.T., December 13, 2005, p. 58.

to shock one's sense of justice" and a new trial must occur as to give another opportunity for right to prevail.[17]

In this case, there was no dispute that the defendant was driving the car that struck the plaintiffs' car in the rear. Nor was there any dispute that the plaintiffs were injured as a result of this collision. Adequate evidence was presented by the plaintiffs, including the testimony of two physicians, as to the extent and permanent nature of their injuries. The jury's verdict was reasonable.

### 6. *Whether the Jury Verdict Was Disproportionately Excessive*

The Supreme Court of Pennsylvania has found that the jury's verdict should only be reversed as excessive if it "shocks our sense of justice."[18] Dr. Peter Corda testified that Arjumand Haq suffered herniated discs with an annular tear as a result of this accident. He further testified that these injuries would require physical therapy, epidural steroid injections and a percutaneous discectomy via nucleoplasty. Dr. Corda found that these injuries were permanent.[19] The jury found for the plaintiff, Arjumand Haq in the amount of $175,000, a reasonable verdict for the injuries proven.

Dr. Martin Kessler testified that the plaintiff Mohammad Haq sustained cervical disc protrusions as a result of the accident which required physical therapy and in-

17. *Burrell v. Philadelphia Electric Co.,* 438 Pa. 286, 289, 265 A.2d 516, 518 (1970).

18. *Smith v. Allegheny County,* 377 Pa. 365, 369, 105 A.2d 137, 139 (1954).

19. Deposition of Peter Corda, p. 34, played to the jury.

jection therapy. He testified further that these injuries were "permanent in nature."[20] The jury found for the plaintiff, Mohammad Haq in the amount of $7,500 which was reasonable for the injuries proven.

The jury verdict in this case was not disproportionately excessive. Plaintiffs produced experts who testified that their injuries were permanent. It was within the jury's discretion to believe these expert witnesses and decide the case accordingly.

Therefore, for the reasons stated above, the judgment of this court should be affirmed.

---

20. Deposition of Martin Kessler, p. 42, played to the jury.